Charles Edward MARKER, Appellant,

v.

STATE of Alaska, Appellee.

No. 7681.

Court of Appeals of Alaska.

Dec. 28, 1984.

1. We grant Witt's motion to reinstate this appeal.

Janet L. Rice and Christine Schleuss, Asst. Public Defenders, and Dana Fabe, Public Defender, Anchorage, for appellant.

W.H. Hawley, Jr., and Peter A. Michalski, Asst. Attys. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, J.

## OPINION

BRYNER, Chief Judge.

Charles Edward Marker was convicted, following a jury trial, of robbery in the second degree, in violation of AS 11.41.-510(a)(1). He appeals, contending that the trial court erred in refusing to give a lesser-included offense instruction on assault in the fourth degree, AS 11.41.230(a)(1). We conclude that, given the evidence presented in this case, a lesser-included offense instruction was required. We therefore reverse.

On the evening of August 2, 1982, William Smart arrived in Anchorage from Hooper Bay. He had approximately $375 cash in a distinctive brown envelope. After checking into the Northern Lights Inn, Smart decided to go downtown to the Fourth Avenue area. He put some of his cash into his wallet and left the envelope containing the rest of the money—approximately $300—at the hotel, locked in his suitcase. Smart spent the evening in several Fourth Avenue bars. He drank about five beers.

Charles Marker was also drinking at various Fourth Avenue bars that night. He was accompanied by a friend, William Lewis; the two men were later joined by J.R., a minor. After the bars closed, Marker and his companions met Smart and offered to sell him a quantity of marijuana. Smart accepted the offer but said he had lost his wallet and needed to return to his hotel for money. Accompanied by Marker, Lewis and J.R., Smart took a taxicab to the Northern Lights Inn.

Upon arrival, the group went to Smart's room, but Smart could not find the key to his suitcase. He returned to the taxicab, borrowed a tire iron, and went back to his room to open his suitcase. Trial testimony concerning the precise sequence of events after Smart returned to his room is somewhat confused. Apparently Smart made additional trips to the taxicab accompanied by Marker and his companions. At any rate, it is undisputed that Smart eventually managed to open his suitcase, and Marker sold Smart a small amount of marijuana.

Approximately five minutes after Smart's last trip to the room, a hotel employee discovered Smart inside the elevator. Smart's lip was cut, he had welts on his neck, and his face was covered with blood. A short time later, a hotel alarm sounded, indicating that someone had left the building through an emergency door in the stairwell. The desk clerk checked the door and saw Marker and another man running from the area. The clerk directed the men to return; Marker came back, but the other man kept running.

Police responded to the scene and interviewed Smart, who accused Marker and J.R. of beating and robbing him. Accord-

ing to Smart, during the attack Marker took the brown envelope that contained his cash.

Marker was placed under arrest. A search disclosed that he had a brown envelope similar to the one described by Smart. The envelope, which appeared to have blood on it, contained $280 in cash. When questioned, Marker told police that the money was his and that he had withdrawn it from a bank earlier that day.

At trial, Marker's theory of defense was that no robbery had occurred. He presented evidence to show that he had kept a substantial amount of money in an Anchorage bank account and had made a cash withdrawal on the afternoon before the offense. Marker further tried to establish that Smart became involved in a fight with Marker after discovering that the marijuana Marker sold him was not genuine. Marker did not testify in his own behalf, but relied on Smart's testimony and the testimony of William Lewis. Smart acknowledged in his testimony that he had paid Marker $10 for a small amount of marijuana. Lewis testified that the substance Marker sold to Smart was actually parsley. During final argument, Marker's counsel attempted to explain Marker's possession of the brown envelope, suggesting that Smart might have given Marker the envelope when he paid Marker for the drugs, and that Marker might have placed his own money into it, together with the payment given to him by Smart.

In support of this theory of defense, Marker proposed a lesser-included offense instruction on assault in the fourth degree. Superior Court Judge Mark Rowland rejected the proposed instruction, concluding that fourth-degree assault was not a lesser-included offense of second-degree robbery, because it required proof of an additional element, physical injury. Marker argues on appeal that Judge Rowland's refusal to instruct on assault resulted from an overly restrictive application of the lesser-included offense doctrine and was mistaken.

■  Alaska Criminal Rule 31(c) governs lesser-included offenses, providing:

(c) *Conviction of Lesser Offense.* The defendant may be found guilty of an offense necessarily included in the offense charged, or of an attempt to commit either the offense charged or the offense necessarily included therein if the attempt is an offense. When it appears that the defendant has committed a crime, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of those degrees only.

The ground rules for determining when "an offense is necessarily included in the offense charged" for purposes of Rule 31(c) are well-settled:

Alaska courts have rejected the strict statutory elements approach to lesser-included offense instructions and have applied the broader cognate approach. *See Elisovsky v. State,* 592 P.2d 1221, 1226 (Alaska 1979); *Christie v. State,* 580 P.2d 310, 320 (Alaska 1978); *Wilson v. State,* 670 P.2d 1149, 1151 (Alaska App. 1983); *Nathaniel v. State,* 668 P.2d 851, 854 (Alaska App.1983); *Baden v. State,* 667 P.2d 1275, 1278 (Alaska App.1983). Under the cognate approach the court must examine the evidence that the state relied on as well as the statutory elements of the offense and determine whether, in the context of the case, it would be possible for the jury to find that the accused had committed the greater offense but not the lesser offense. *Rivett v. State,* 578 P.2d 946, 947 (Alaska 1978). If a finding of guilt on the greater offense would be inconsistent with acquittal on the lesser, and there is a disputed fact that distinguishes the greater offense from the lesser, an instruction on the lesser offense must be given. *Rice v. State,* 589 P.2d 419, 420 (Alaska 1979); *Wilson v. State,* 670 P.2d 1149, 1151 (Alaska App.1983).

*Minano v. State,* 690 P.2d 28, 30–31 (Alaska App.1984) (footnote omitted).

In the present case, Marker's charge of second-degree robbery was prosecuted pursuant to former AS 11.41.510(a)(1), which provided:

*Robbery in the second degree.* (a) A person commits the crime of robbery in the second degree if, in the course of taking or attempting to take property from the immediate presence and control of a person, he uses or threatens the immediate use of force upon any person with intent to

(1) prevent or overcome resistance to his taking the property or his retention of the property after taking;

. . . .

"Force," as used in the robbery statute, is defined as follows in AS 11.81.900(b)(22):

(22) "force" means any bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint, or confinement; "force" includes deadly and non-deadly force.

Marker's proposed lesser-included offense instruction on assault in the fourth degree was based on AS 11.41.230(a)(1), which provides:

*Assault in the fourth degree.* (a) A person commits the crime of assault in the fourth degree if

(1) that person recklessly causes physical injury to another person;

. . . .

"Physical injury" is defined in AS 11.81.900(b)(40) as "a physical pain or an impairment of physical condition."

■ Although robbery has traditionally been viewed as the combination of theft and assault,[1] the state correctly notes that the traditional definitions of robbery and assault have been altered by these statutes. If consideration is strictly limited to current statutory definitions, assault in the fourth degree is not necessarily included in the offense of robbery in the second degree. Under the applicable statutory definitions, physical injury, a necessary element of fourth-degree assault, is not a necessary element of second-degree robbery, since robbery may be committed by the threat of force, without any use of actual force.

In keeping with Alaska's flexible approach to lesser-included offenses, however, we must look beyond the statutory elements of robbery and assault to the evidence actually presented by the state in this case. Here the state's proof showed that Marker took Smart's money by use of actual rather than threatened force. No evidence was presented from which the jury could have concluded that Marker committed the robbery without actually using force against Smart.

Nevertheless, the state maintains that fourth-degree assault was not a lesser-included offense of second-degree robbery. The state posits that it would have been possible for the jury to find that Marker used actual force in robbing Smart but did not cause any physical injury. Accordingly, the state reasons that the jury could have convicted Marker of robbery without also convicting of assault.

■ The state's argument is predicated on the divergent approaches taken by the criminal code in defining "force" and "physical injury." In defining "force"— the crucial element of the robbery statute—the code refers to conduct (the conduct of the accused toward the victim): " 'force' means any bodily impact, restraint or confinement . . . ." AS 11.81.900(b)(22). In defining "physical injury"—the key element in the assault statute—the code speaks in terms of results (the result of the accused's conduct toward the victim): " 'physical injury' means a physical pain or an impairment of physical condition." AS 11.81.900(b)(40). Physical injury and force are closely related concepts, since injury is the natural and probable consequence of force. In this respect the robbery and assault statutes address precisely the same societal interest: the protection of innocent persons from physical harm. Yet by using force as an element of robbery and physical injury as an element of assault, and by taking different approaches in defining

1. *See A.L.I., Model Penal Code and Commentaries,* Part II § 222.1 at 96–115 (1980); *Minano v.* *State,* 690 P.2d 28, 33 n. 5 (Alaska App.1984).

those terms, the code leaves open the possibility that, in some instances, force may be used in commission of a second-degree robbery without injury being inflicted. In those instances no fourth-degree assault will occur.[2] Indeed, even where the force used in commission of a robbery consists of bodily impact,[3] there will be some cases in which a fourth-degree assault is not committed, since bodily impact does not invariably cause "pain or impairment of a physical condition," *i.e.*, physical injury.

The state maintains that this is such a case. Relying on evidence presented during trial, which tended to show that Smart had consumed a substantial amount of liquor and was intoxicated on the night of the offense, the state asserts that the jury could have found that Smart was too intoxicated to feel any actual pain and that he was therefore not physically injured under the definition of AS 11.81.900(b)(40).

While the state's argument may be logically sound and technically correct in the abstract, it is hardly realistic in light of the evidence presented in this case. Smart testified that Marker struck him repeatedly and choked him so hard that he was unable to breathe. Smart blacked out at one point due to lack of breath. Witnesses who saw Smart in the hotel following the attack testified that his lip was cut, he had red welts on his neck, and his face was covered with blood. Although there was evidence indicating that Smart might have been intoxicated, nothing in the record suggests that the effects of intoxication were so great that Smart was incapable of feeling the effects of Marker's attack. Even assuming a jury could rationally have found that Smart was literally feeling no pain, given the testimony of witnesses concerning Smart's condition and Smart's uncontradicted testimony concerning his loss of consciousness during Marker's attack, we believe the state's evidence clearly established "an impairment of physical condition," as that term is used in the statutory definition of "physical injury." AS 11.81.900(b)(40).[4]

Our review of the record in this case convinces us that if the jury believed the state's evidence concerning Marker's attack on Smart and was willing to convict Marker of robbery based on this evidence, it could not rationally have concluded that Marker did not physically injure Smart. We therefore conclude that assault in the fourth degree was a lesser offense necessarily included in the offense charged, robbery in the second degree. Since there was at least some evidence presented at trial to justify a finding that Marker was guilty of assault but not of robbery, a lesser-included offense instruction on assault was required. *See Wilson v. State*, 670 P.2d 1149, 1151 (Alaska App.1983).

2. In *Minano v. State*, 690 P.2d at 31–33, we discussed the related issue of theft as a lesser-included offense of robbery under the definitions contained in Alaska's Revised Criminal Code, noting similar problems created by the lack of concordance between statutory provisions defining "taking" for purposes of the robbery statute and "theft" for purposes of the theft statutes.

3. Alaska Statute 11.81.900(b)(22) describes four separate ways in which "force" can be shown: (1) bodily impact, (2) restraint, (3) confinement, or (4) the imminent threat of any of the above. In the present case the state's proof of force by Marker was limited to evidence of bodily impact. Evidence presented by the state indicated that Marker struck Smart repeatedly and choked him. Thus, our consideration of the relationship between the statutory definitions of "force" and "physical injury" in this case is restricted to situations where force consists of bodily impact. It would probably be even more likely that physical injury would not occur where force consisted of restraint or confinement. It is also evident that, in cases involving only threatened force, physical injury would be the exception and not the rule.

4. Likewise, the state's theory concerning Smart's intoxication and his inability to feel pain disregards other problems. Assuming that the only way for the jury not to find that Smart suffered physical injury was by concluding that he was too intoxicated to feel pain, Marker might nevertheless have been guilty of attempted assault in the fourth degree. Criminal Rule 31(c) expressly entitles a defendant to a lesser-included offense instruction when an attempt is a necessarily included offense of a substantive crime. *Compare Minano v. State*, 690 P.2d 28 (Alaska App.1984) (joyriding, a lesser-included offense of theft, was also a lesser-included offense of robbery, even though theft may not have been a lesser-included offense of robbery).

 Our holding is limited to the conclusion that, under the evidence in this case, it would realistically have been impossible for the jury to find Marker guilty of robbery without also finding that he was guilty of assault. We do not wish to imply, however, that a lesser-included offense instruction would necessarily have been inappropriate if there was some reasonable theory under which the jury could have found Marker guilty of robbery without also finding him guilty of assault.

Cases decided in other jurisdictions strongly suggest that the cognate approach should be applied realistically, not restrictively, and that, even if the jury could theoretically convict of the charged offense without also convicting of the lesser, a lesser-included offense instruction may be appropriate when: (1) the evidence relied on by the state would support conviction of a lesser offense, (2) the lesser offense is inherently related to the offense charged, so that proof of the greater would ordinarily—but not invariably—entail proof of the lesser, and (3) the accused's theory of defense is not inconsistent with conviction of the lesser and acquittal of the greater. *See, e.g., United States v. Johnson,* 637 F.2d 1224 (9th Cir.1980); *United States v. Whitaker,* 447 F.2d 314 (D.C.Cir.1971); *People v. Geiger,* 674 P.2d 1303 (Cal.1984). Moreover, both this court and the Alaska Supreme Court, applying the cognate approach, have found lesser-included offense instructions appropriate in cases where it was at least arguably possible that the jury found the defendant guilty of the charged offense without also finding him guilty of the lesser offense. *See, e.g., Elisovsky v. State,* 592 P.2d 1221 (Alaska 1979); *Nathaniel v. State,* 668 P.2d 851 (Alaska App. 1983).

 In this case, the state's insistence that lesser-included offense instructions should be permitted only if there is no conceivable way for the jury to convict of the charged offense without also convicting

of the lesser appears to be a throwback to the type of rigid formalism that led to abandonment of the statutory elements approach to lesser-included offenses. Although it is unnecessary for us to decide, beyond the circumstances of the present case, the ultimate reach of the cognate approach, we take this occasion to remind the trial courts that the lesser-included offense doctrine is founded on policies of reasonableness and fairness. As recently stated by the Supreme Court of California:

> In doubtful situations, however, the determinative factor should be whether the option to convict a defendant of a related offense is reasonably necessary to insure that the jury is afforded the opportunity to decide all material issues presented by the evidence in accord with the defendant's theory of the case, where denial of that opportunity might undermine the reasonable doubt standard.

*People v. Geiger,* 35 Cal.3d 510, 199 Cal. Rptr. 45, 674 P.2d 1303, 1316 n. 12 (Cal. 1984).[5]

The conviction is REVERSED.

---

5. Our disposition of the lesser-included offense issue makes it unnecessary for us to reach Marker's other points on appeal, since they involve questions that in all likelihood will not recur upon retrial.