908 P.2d 731

STATE of New Mexico,
Plaintiff–Appellee,

v.

James T. MEADORS, Defendant–
Appellant.

No. 22722.

Supreme Court of New Mexico.

Nov. 6, 1995.

**40**

Mary Y.C. Han, Carolyn M. Nichols, Albuquerque, for Appellant.

Tom Udall, Attorney General, William McEuen, Ass't. Attorney General, Santa Fe, for Appellee.

## OPINION

MINZNER, Justice.

James (Johari) Meadors appeals from his convictions for aggravated battery and negligent arson. This case comes to us on certification from the Court of Appeals on the issue of whether aggravated battery is a lesser-included offense of attempted murder. Meadors asserts that the trial court denied him due process by instructing the jury on aggravated battery as a lesser-included offense of attempted murder. In addition, Meadors raises two other constitutional issues. He claims that a Sixth Amendment violation occurred when the trial court restricted counsel from cross-examining the victim regarding certain medical problems that allegedly arose out of the victim's drug use. Finally, Meadors argues that the trial court's sentence imposed multiple punishments for the same offense in violation of the Fifth Amendment's prohibition against double jeopardy. We affirm Meadors' convictions and sentence.

### I. Facts

Meadors had been friends with victim Garry Walker for several years prior to May 12, 1993. On that date Meadors became upset when he learned from his wife that she had obtained certain street drugs known as "white crosses" from Walker. After the conversation with his wife in which he learned this information, Meadors walked out of his house and picked up a small cup of gasoline that he had been using earlier in the day to refuel his lawn mower. Taking the cup with him, he got into his vehicle and drove several blocks to Walker's house.

Walker testified at trial that Meadors appeared at his front door as Walker lay on the floor of his living room watching television. After a brief exchange of words, Meadors doused Walker with gasoline, struck a match, and ignited him. On fire and in a panic, Walker ran first to the kitchen and then to a bedroom where a secondary fire broke out in the closet. He eventually managed to extinguish the flames in the shower, but not before he had sustained serious burns over sixty percent of his body. Both Walker and Meadors testified, and their testimony was generally consistent. Meadors testified, however, that he had not intentionally doused Walker with gasoline, but that he had thrown the cup down in anger or disgust, and that the gasoline had inadvertently splashed on Walker. He also testified that he had struck the match in order to protect himself from Walker, who was physically larger than he, and that Walker had walked into the match as he advanced toward Meadors.

## II. The Prosecutor's Request for a Jury Instruction on the Lesser–Included Offense of Aggravated Battery

The grand jury returned a three-count indictment charging Meadors with attempted first degree murder, aggravated arson, and negligent use of an explosive. At trial after both parties had rested, the State requested a jury instruction on aggravated battery as a lesser-included offense of attempted first degree murder. Meadors objected on the ground that aggravated battery is not a lesser-included offense of attempted murder and that such an instruction would violate his constitutional right to receive notice of the crime charged.[1] *See Schmuck v.*

*United States,* 489 U.S. 705, 717–18, 109 S.Ct. 1443, 1451–52, 103 L.Ed.2d 734 (1989). On appeal Meadors argues that under *State v. Henderson,* 116 N.M. 537, 541, 865 P.2d 1181, 1185 (1993), one offense is not a lesser-included offense within another unless all of the statutory elements of the lesser offense are also statutory elements of the greater offense. Aggravated battery includes the statutory elements of an unlawful touching and either the use of a deadly weapon, great bodily harm, or the likelihood of great bodily harm, none of which are statutory elements of attempted murder. *Compare* NMSA 1978, § 30–3–5 (Repl.Pamp.1994) *with* NMSA 1978, §§ 30–2–1 & 30–28–1 (Repl. Pamp.1994).

### A. Analyzing Lesser–Included Offense Questions

We begin our analysis by recognizing that the issue of whether one criminal offense is a lesser-included[2] offense of another arises in at least three different contexts. First, the issue comes up in the context of double jeopardy. The Double Jeopardy Clause prohibits successive prosecutions for two offenses arising out of the same conduct if either one is a lesser-included offense within the other. *See Brown v. Ohio,* 432 U.S. 161, 165–66, 97 S.Ct. 2221, 2225–26, 53 L.Ed.2d 187 (1977). The second type of situation arises when the defendant requests a jury instruction on a lesser-included offense of the crime charged, and the third situation is that which is presented here: a request by the prosecutor for a jury instruction on a lesser-included offense. Although the latter two categories both fall within the purview of SCRA 1986, 5–611(D) (Repl.Pamp.1992),[3] we

1. Meadors asserts that this lack of notice violated his right to due process of law. Most of the federal cases in this area, *see, e.g., Russell v. United States,* 369 U.S. 749, 760–64, 82 S.Ct. 1038, 1045–47, 8 L.Ed.2d 240 (1962), rely upon the Fifth Amendment's Grand Jury Clause as well as the Sixth Amendment right of a criminal defendant "to be informed of the nature and cause of the accusation." Although the Grand Jury Clause is not applicable to criminal proceedings in state courts, *Hurtado v. California,* 110 U.S. 516, 538, 4 S.Ct. 111, 122, 28 L.Ed. 232 (1884), the Sixth Amendment's Notice Clause is applicable to the states through the Fourteenth Amendment's Due Process Clause. *See Gray v.*

*Raines,* 662 F.2d 569, 571 (9th Cir.1981). Meadors has relied on the protection afforded him under the Federal Constitution; therefore, we assume without deciding that the New Mexico Constitution provides the same protection. *See* N.M. Const. art. II, § 14.

2. We use the terms "lesser-included" and "necessarily-included" interchangeably.

3. SCRA 5–611(D) provides, in pertinent part: "Conviction of Lesser Offense. If so instructed, the jury may find the defendant guilty of an offense necessarily included in the offense charged or of an attempt to commit either the

view these two categories as distinct because different interests are implicated depending upon whether the defendant or the State requests the instruction. *See United States v. Whitaker*, 447 F.2d 314, 321 (D.C.Cir. 1971), *overruled by Schmuck*, 489 U.S. at 716, 109 S.Ct. at 1450–51. The defendant's constitutional right to notice of the crime against which he must defend is a consideration that arises when, as here, the State requests a jury instruction on a lesser-included offense over the defendant's objection. Notice is not an issue when the defendant makes such a request because the request itself constitutes a waiver of the right to notice. A defendant's request does, however, implicate other constitutional considerations. *See generally* Edward G. Mascolo, *Procedural Due Process and the Lesser–Included Offense Doctrine*, 50 Alb.L.Rev. 263, 267–69 (1985) [hereinafter Mascolo]. This Court's opinion in *Henderson*, 116 N.M. at 541, 865 P.2d at 1185, involved such a request, and we will return to that case later in this discussion.

Courts of different jurisdictions have further complicated this area of the law by developing several different analytical approaches to the question of whether one offense is a lesser-included offense within another. *See generally State v. Jeffries*, 430 N.W.2d 728, 730–32 (Iowa 1988). We offer brief descriptions of these different theories with the caveat that, although there are three or four basic theories, there is much overlap between them and it is often difficult to classify precisely a particular court's methodology. The most straightforward and least flexible approach is the so-called "strict elements" test. Under this method, a court would find an offense to be a lesser-included offense of another only if the statutory elements of the lesser offense are a sub-set of the statutory elements of the greater offense such that it would be impossible ever to commit the greater offense without also committing the lesser offense. The United States Supreme Court adopted this approach in *Schmuck*, 489 U.S. at 716, 109 S.Ct. at 1450–51, and New Mexico has embraced a form of the strict elements test, based on offense charged or an offense necessarily includ-

*Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), as an aid in determining legislative intent for double jeopardy purposes. *See Swafford v. State*, 112 N.M. 3, 14, 810 P.2d 1223, 1234 (1991). Another analytical approach is the "indictment" or "pleading" theory, also referred to as the "cognate-pleading" theory, *Jeffries*, 430 N.W.2d at 731, under which one offense is lesser-included within the offense charged if the allegations of the charging document, when taken as true, would prove all the essential elements of the lesser offense. *See United States v. Browner*, 937 F.2d 165, 168 (5th Cir.1991) (discussing pleading theory). Other courts have employed what has been referred to as the "inherent relationship" test, which focuses upon the interests to be protected and whether "proof of the lesser offense is necessarily [though not invariably] presented as part of the showing of the commission of the greater offense." *Whitaker*, 447 F.2d at 319. Another method is the "cognate-evidence" approach, which involves an examination of the statutory elements and the evidence adduced at trial to determine whether, under the facts of the particular case, the lesser offense is sufficiently related to the charged offense to warrant a jury instruction on the former. *See Jeffries*, 430 N.W.2d at 731. Still another analytical method embodies a hybrid of the cognate-pleadings and cognate-evidence approaches. Under this hybrid method, the court's inquiry focuses upon both the charging instrument and the evidence adduced at trial. *See* Mascolo, *supra*, at 276.

### B. The DeMary Approach

The parties' arguments in this appeal bear out the confusion that currently exists in this jurisdiction over which method of lesser-included offense analysis is appropriate when the State requests a lesser-included offense instruction. This Court last addressed the issue in *State v. DeMary*, 99 N.M. 177, 655 P.2d 1021 (1982), in which we said:

> For the offense to be necessarily included, the greater offense cannot be committed without also committing the lesser offense. In order to determine whether the [lesser

ed therein."

offense] is necessarily included in the greater offense . . ., the specific [statutory] elements ˙ of [the greater and lesser offense] must initially be construed in light of the evidence. The particular facts of each case must then be reviewed in light of the specific elements of each crime. When the evidence justifies the instructions, the proof of such particular circumstances will be determined by a jury.

*Id.* at 179, 655 P.2d at 1023 (citations omitted). Meadors argues on appeal that with this language the *DeMary* Court embraced the strict elements approach. Meadors buttresses his argument by pointing out that this Court applied the strict elements approach in *Henderson,* 116 N.M. at 541, 865 P.2d at 1185, a case involving a defendant's request for a jury instruction on a lesser-included offense. The State, on the other hand, argues that *DeMary* embraced the cognate approach rather than the strict elements approach, and that the *Henderson* opinion does not control the present case.

As these arguments demonstrate, *DeMary* has left some confusion in its wake. It is likely that some of this confusion arises from the statement in *DeMary* that "[f]or the offense to be necessarily included, the ˙greater offense cannot be committed without also committing the lesser offense." 99 N.M. at 179, 655 P.2d at 1023. We recognize that this language provides a basis for Meadors' view that the *DeMary* Court adopted a strict elements approach. However, the result in *DeMary* demonstrates that this interpretation is incorrect. After examining the statutory elements of the crimes and the evidence adduced at trial, the *DeMary* Court concluded that, under the facts of that case, aggravated assault was a lesser-included offense of aggravated battery. *Id.* at 179–80, 655 P.2d at 1023–24.

The defendant in *DeMary* was convicted of the lesser offense of aggravated assault, which included the essential elements of "unlawfully assaulting or striking at another with a deadly weapon." *Id.* (emphasis omitted) (quoting NMSA 1978, Section 30–3–2). The elements of aggravated battery for which DeMary was also charged were "the unlawful touching or application of force to the person of another with intent to injure that person or another." *Id.* at 178, 655 P.2d at 1022 (emphasis omitted) (quoting Section 30–3–5). Under these definitions, it is possible to commit the crime of aggravated battery without also committing the crime of aggravated assault. The *DeMary* Court concluded however that, *"under the particular circumstances of this case,"* it would not be possible to commit aggravated battery without also committing aggravated assault. *Id.* at 179, 655 P.2d at 1023 (emphasis added).

Because aggravated assault included a statutory element that was not a statutory element of aggravated battery, it follows that the *DeMary* Court could not have been applying a strict elements method of analysis. *See Schmuck,* 489 U.S. at 716, 109 S.Ct. at 1450–51. Instead, we conclude that the *DeMary* Court intended that "[f]or the offense to be necessarily included, the greater offense cannot be committed [*under the facts of the case as alleged in the charging document and supported by the evidence* ] without also committing the lesser offense." *See DeMary,* 99 N.M. at 179, 655 P.2d at 1023. The Court of Appeals took a similar view of *DeMary* in *State v. Jacobs,* ˙102 N.M. 801, 804, 701 P.2d 400, 403 (Ct.App.1985).

After considering the language of *DeMary* in light of some of the decisions of the courts of our sister states and other authorities, we conclude that the State accurately characterizes *DeMary* as adopting the hybrid approach, which combines the cognate-pleadings and the cognate-evidence approaches, similar to that used in Alaska and Connecticut. *See Marker v. State,* 692 P.2d 977, 980 (Alaska Ct.App.1984); *State v. Marino,* 190 Conn. 639, 462 A.2d 1021, 1029 (1983). One commentator has described this approach as follows:

Some courts have blended the cognate theory, with its emphasis upon analyzing the accusatory instrument, and the evidentiary facet of the statutory theory to produce a two-pronged inquiry. These courts assess both the greater offense, as charged in the accusatory pleading, and the evidence developed at trial to determine the propriety of lesser-included offense instructions to the jury. This approach re-

**44**

flects a concern that it is unrealistic to apply the reasonable-doubt standard of proof solely in terms of the offense as charged in the accusatory pleading. It is more realistic, and just, for a court to determine the need for lesser-included offense instructions by examining not only the offense alleged in the charging instrument but also the evidence adduced at trial, for it is that evidence which will ultimately confirm or invalidate the accuracy of the accusatory pleading.

Mascolo, *supra*, at 276 (footnotes omitted).[4] As in *Marker*, we shall refer to this hybrid test simply as the cognate approach. *See Marker*, 692 P.2d at 980.

■ We will continue to adhere to the cognate approach as set forth in *DeMary*. This method avoids what we view as the overly technical inflexibility of the strict elements approach, *see id.*, yet provides the defendant with adequate notice of the crime against which he must defend. Furthermore, in order to guide the trial courts in their application of the *DeMary* standard, we provide the following clarification. First, the trial court should, when faced with a request from the State for a lesser-included offense instruction, grant the request when the statutory elements of the lesser crime are a subset of the statutory elements of the charged crime. In addition, the trial court should grant such an instruction if (1) the defendant could not have committed the greater offense in the manner described in the charging document without also committing the lesser offense, and therefore notice of the greater offense necessarily incorporates notice of the lesser offense; (2) the evidence adduced at trial is sufficient to sustain a conviction on the lesser offense; and (3) the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser. *See Marino*, 462 A.2d at 1029.

■ Application of these principles to the case at bar supports the conclusion that the trial court properly instructed the jury on aggravated battery as a lesser-included offense of attempted murder. Here the State's theory of the case differed from the defendant's theory only on the issue of his mental state. Meadors testified that he had thrown the cup of gasoline down in disgust, inadvertently splashing Walker and that he had then struck the match to protect himself from Walker. Based upon the allegations in the indictment and the evidence adduced at trial, a jury could reasonably conclude that Meadors had intended to throw gasoline on Walker and ignite him, but that he had lacked the intent to take Walker's life. This would support a conviction of aggravated battery, but not of attempted murder.

### C. The Defendant's Right to Notice

In urging this Court to embrace a strict elements approach, Meadors contends that a fact-based inquiry will not adequately protect a defendant's right to notice. Meadors advances this argument with a citation to *Schmuck*, in which the United States Supreme Court said:

It is ancient doctrine of both the common law and of our Constitution that a defendant cannot be held to answer a charge not contained in the indictment brought against him. This stricture is based at least in part on the right of the defendant to notice of the charge brought against him. Were the prosecutor able to request an instruction on an offense whose elements were not charged in the indictment, this right to notice would be placed in jeopardy. Specifically, if, as mandated under the inherent relationship approach, the determination whether the offenses are sufficiently related to permit an instruction is delayed until all the evidence is developed at trial, the defendant may not have constitutionally sufficient notice to support a lesser included offense instruction re-

**4.** Citing *State v. Boyenger*, 95 Idaho 396, 400–01, 509 P.2d 1317, 1321–22 (1973), Mascolo's article lists Idaho as another state that follows this approach. However, cases decided by the Idaho Supreme Court since *Boyenger* indicate that the Idaho courts now consider only the accusatory instrument, and not the evidence adduced at trial, when determining whether a lesser offense is lesser-included within the charged offense. *See State v. Thompson*, 101 Idaho 430, 433–34, 614 P.2d 970, 973–74 (1980).

quested by the prosecutor if the elements of that lesser offense are not part of the indictment.

489 U.S. at 717–18, 109 S.Ct. at 1451–52 (citations omitted). We do not think that the constitutional infirmities described in this passage apply to the *DeMary* standard.

First, we note that the *Schmuck* Court did not hold that the defendant's constitutional right to notice mandated adoption of the strict elements approach. The Court was not confronted with the issue of a defendant's constitutional right to notice in the case. Instead the *Schmuck* Court examined what standard to apply for Federal Rule of Criminal Procedure 31(c).[5] As part of its Rule 31(c) analysis, the Court noted that adopting the relaxed inherent relationship approach might not provide sufficient protection to a defendant under the constitutional notice requirement. This in turn could lead to an asymmetric application of Rule 31(c) in which a defendant would be entitled to a lesser-included offense instruction under the rule, whereas the prosecution, bound by the stricter mandates of the constitutional notice requirement, might not. Thus, in order to ensure mutuality under Rule 31(c), the *Schmuck* Court adopted the most restrictive analysis, which would clearly satisfy the constitutional requirements and apply equally to both sides. It did not attempt to alter the traditional approach to the issue of a defendant's constitutional right to notice. *See Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962) (noting that to satisfy constitutional requirements an indictment must contain the elements of the offenses charged, and sufficiently apprise the defendant of the nature of the offenses that he or she must defend against).

Second, the concerns expressed by the *Schmuck* Court were directed at the inherent relationship approach employed by the lower court. *Schmuck*, 489 U.S. at 716–17, 109 S.Ct. at 1450–51. The cognate approach adopted by this Court in *DeMary*, however, provides stronger protections than the inherent relationship approach. The *DeMary* approach looks primarily to whether the accusatory instrument encompasses the elements of the lesser-included offense, and only looks to the evidence adduced at trial to help interpret the applicability of those elements set out in the instrument. Thus, the *Schmuck* Court's criticism that under the inherent relationship standard a court would focus solely on a defendant's "conduct proved at trial regardless of the statutory definitions" is inapposite to the *DeMary* approach. *Id.* at 717, 109 S.Ct. at 1451.

■■■ The cognate approach adopted in *DeMary* is fully consistent with a defendant's constitutional right to adequate notice. Under *DeMary*, as now clarified, an offense is a lesser-included offense only if the defendant cannot commit the greater offense in the manner described in the charging document without also committing the lesser offense. Accordingly, the defendant should be fully aware of the possible offenses for which he or she may face prosecution and should have ample opportunity to prepare a defense. *Cf. State v. Crews*, 110 N.M. 723, 737, 799 P.2d 592, 606 (Ct.App.) (applying *Russell* analysis to evaluate constitutional notice), *cert. denied*, 109 N.M. 232, 784 P.2d 419 (1989).

■■■ Finally, we emphasize that the trial court should, when faced with a motion by the State for a lesser-included offense instruction, conduct an independent analysis of the notice issue. If the judge determines for any reason that under the circumstances of that case a defendant has not received constitutionally adequate notice of a lesser offense, then the judge should deny the instruction.

■■■ Our evaluation of the indictment within the context of this case leads us to conclude that, although this may be a close case, Meadors received meaningful notice that he faced liability for the crime of aggravated battery. Count I of the indictment alleged that Meadors had "intended to commit First Degree Murder, and began to do an act which constituted a substantial part of First Degree Murder." This allegation describes the statutory elements of attempted murder, but it fails to allege two statutory

---

**5.** Rule 31(c) provides in relevant part: "The defendant may be found guilty of an offense necessarily included in the offense charged." *Schmuck*, 489 U.S. at 715, 109 S.Ct. at 1450.

elements of aggravated battery, an unlawful touching and either great bodily harm or the likelihood of great bodily harm. However, Count II of the indictment, which charged Meadors with aggravated arson, averred that Meadors "did maliciously or willfully start a fire or cause an explosion with the intent to destroy or damage the residence ... which belonged to Gary Walker, which caused great bodily harm to Gary Walker." Finally, Count III charged Meadors with malicious use of an explosive and alleged that Meadors "did maliciously explode or attempt to explode or place an explosive with the intent to injure or intimidate or terrify another or to damage anothers [sic] property." All three counts alleged that the conduct occurred on May 12, 1993, and there has never been any doubt that the three counts referred to the same conduct and that this conduct—dousing Walker with gasoline and igniting him—was the act constituting a "substantial part of First Degree Murder" to which Count I referred. Thus, the three counts of the indictment put Meadors on notice that he would need to defend against the essential elements of an unlawful touching and serious bodily injury to the victim. In that respect, this case is distinguishable from those cases in which appellate courts have reversed convictions on the ground that a defendant's Sixth Amendment right to notice was violated when the defendant was convicted of an offense that included an element not charged in the charging instrument. *See Sheppard v. Rees,* 909 F.2d 1234, 1236–37 (9th Cir.1989); *Givens v. Housewright,* 786 F.2d 1378, 1381 (9th Cir.1986).

Moreover, the defendant's theory of the case differed from the State's theory only on the issue of his mental state at the time of the act. Meadors testified that he was at the scene when Walker was burned, that he had thrown the cup of gasoline, and that he had struck the match. Under the facts as alleged in the indictment and supported by the evidence presented by *both* parties, Meadors could not have committed the crime of attempted murder without also committing the crime of aggravated battery. Thus, we cannot say that Meadors was "taken by surprise" or that his defense was in any way impaired. *See Gray,* 662 F.2d at 574 (Tang,

J., concurring); *Sheppard,* 909 F.2d at 1236 n. 2 (recognizing that meaningful notice of a criminal charge can come from various sources and that the "Constitution itself speaks not of form, but of substance").

### D. The Status of Henderson

Our decision today requires us to revisit our holding in *Henderson,* 116 N.M. at 541, 865 P.2d at 1185. In that case, Henderson unsuccessfully argued that the trial court had committed reversible error by refusing to grant his requested instruction on indecent exposure as a lesser-included offense of contributing to the delinquency of a minor (CDM). We concluded that because indecent exposure includes statutory elements not included within CDM, the former is not lesser-included within the latter. *Id.* In short, we applied the strict statutory elements method of analysis.

■ Our reaffirmation of *DeMary* in the present appeal thus appears to result in two different standards. If, on the one hand, the State requests a lesser-included offense instruction, then the trial court must analyze the instruction's propriety under *DeMary.* Such an inquiry focuses on the pleadings, the evidence adduced at trial, and the defendant's constitutional right to notice. On the other hand, if the defendant requests the instruction, then notice is not a concern, and *Henderson* mandates application of the strict elements approach. This dual standard may actually make it easier for the State to obtain a lesser-included offense instruction, and for this reason may be offensive to the due process clauses of our State and Federal Constitutions. *See generally* Mascolo, *supra,* at 283–85. Because the issue is not properly before us and has not been briefed, we will not attempt to define the precise contours of the defendant's right to a lesser-included offense instruction. However, we note that the *Henderson* opinion did not discuss and did not purport to overrule the line of cases describing a defendant's right to a lesser-included offense instruction. *E.g., State v. Escamilla,* 107 N.M. 510, 512, 760 P.2d 1276, 1278 (1988) (there must be "evidence tending to establish the lesser offense" and "some view of the evidence which could sustain a

finding that the lesser offense was the highest degree of the crime committed") (quoting *State v. Hernandez*, 104 N.M. 268, 276, 720 P.2d 303, 311 (Ct.App.), *cert. denied*, 104 N.M. 201, 718 P.2d 1349 (1986)). We do decide that the defendant's right to such an instruction is at least as great as the State's right, and that the defendant is entitled to such an instruction if, under the facts of a given case, the State would be so entitled. Thus, to the extent that *Henderson* applies the strict elements approach, that case is overruled as inconsistent with *Escamilla*.

### III. Meadors' Confrontation Clause Claim

In his second claim of error, Meadors asserts that the trial court violated his Sixth Amendment right of confrontation[6] by restricting counsel's cross-examination of three of the State's witnesses regarding the victim's gastro-intestinal illness.

Walker, his mother, and his physician, Dr. Tuchsen, testified about the extent of Walker's burn injuries. Walker apparently remained in the hospital for at least six weeks, although there was no testimony regarding the precise length of his hospital stay.[7] While at the hospital he underwent surgery for a gastro-intestinal disorder in addition to the burn treatments that he received. The cause of the gastro-intestinal disorder was apparently unrelated to the burn injuries, and Meadors asserted at trial that it resulted from Walker's drug abuse. We assume that Walker's hospital stay would have been shorter had he not suffered from the gastro-intestinal problem.

During cross-examination of Walker by Meadors' counsel, Mary Han, the following colloquy took place:

*Han:* Did [the drugs] have any ill-effects on your body, sir?

*Walker:* No.

*Han:* None at all?

*Walker:* Not that I know of.

*Han:* Not that you know of. Did you have an operation in connection—[interrupted by objection]

At the bench conference that ensued, Han explained that she was attempting to attack Walker's credibility by refuting his statement that he had had no ill effects from drug abuse. The State complained that Han was attempting to "bring in mountains of [irrelevant] medical testimony," and the court sustained the State's objection. Han subsequently cross-examined Walker regarding allegedly inconsistent statements made to the arson investigator and others.

At a later conference outside the presence of the jury, Han again brought up this issue. After reading from a medical report that indicated that Walker may have suffered from drug-induced gastro-intestinal disease, Han argued that cross-examining Walker regarding this medical condition would be relevant to both Walker's credibility and the issue of great bodily harm. The State argued that the line of questions was both irrelevant and prejudicial in that the defense intended to "exploit the [victim] as some sort of 'drug dealer' and 'drug taker.' " Judge Blackhurst then ruled as follows: "Well, not surprisingly, in this country, drug dealers and drug users have rights. And one of them is to have the same protections that everybody else has. I will rule again that it is more prejudicial than probative, that it does not go to the issue of credibility."

The following day, Han renewed her efforts to bring in the disputed evidence by proffering to the court Dr. Tuchsen's testimony. Dr. Tuchsen testified outside the presence of the jury that Walker had suffered from a potentially life-threatening gastro-intestinal condition and that some unspecified portion of the hospital stay was

---

6. Meadors' argument on this point rests entirely on the Federal Confrontation Clause. He does not argue that the confrontation provision in the New Mexico Constitution, which is worded identically to the federal provision, affords him greater protections. *Compare* U.S. Const. amend. VI *with* N.M. Const. art. II, § 14. Nor are we aware of any published New Mexico opinion construing the state provision differently from the federal provision.

7. The State argues that because there was no testimony about the duration of Walker's hospital stay, the issue of whether a portion of that stay is attributable to the gastro-intestinal disorder is irrelevant.

attributable to that condition. Dr. Tuchsen also testified that the condition may have resulted from Walker's drug abuse, but that "there's no real indication that [drug abuse] was the cause of the [gastro-intestinal] problem in Mr. Walker. As best I can tell, I can't really say what the cause of the problem was." The court reaffirmed its earlier ruling.

On appeal, Meadors argues that cross-examination of Walker, his mother, and Dr. Tuchsen regarding the gastro-intestinal disorder was relevant to both Walker's credibility and the issue of great bodily harm, and that the trial court erred by refusing to permit this line of cross-examination. The State argues that the proposed cross-examination was not relevant but that, even if it was, the trial court properly excluded it because its prejudicial effect substantially outweighed its relevance. Additionally, the State argues that even if there was a Confrontation Clause violation, it was harmless error. *See Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986) (discussing harmless-error analysis). We review the court's ruling under an abuse-of-discretion standard, *see Sanchez v. State,* 103 N.M. 25, 27, 702 P.2d 345, 347 (1985), and conclude that there was no error.

Meadors relies primarily upon *Van Arsdall* and *Sanchez. Van Arsdall* was a murder case in which a witness testified for the State that he had seen the defendant at the crime scene. *Van Arsdall,* 475 U.S. at 675, 106 S.Ct. at 1432. Van Arsdall's attorney attempted to cross-examine the witness concerning the prosecutor's agreement to dismiss a public drunkenness charge that had been pending against him. *Id.* Invoking Delaware Rule of Evidence 403,[8] the trial court refused to permit this line of cross-examination. *Id.* The Delaware Supreme Court reversed Van Arsdall's conviction on the ground that the limitation on cross-examination had violated his Sixth Amendment right to confront the prosecution's witnesses. *Id.* at 677, 106 S.Ct. at 1434.

Agreeing that there had been a constitutional violation, the United States Supreme Court said, "By ... cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated [Van Arsdall's] rights secured by the Confrontation Clause." *Id.* at 679, 106 S.Ct. at 1435. In our view, this passage brings out an important distinction between *Van Arsdall* and this case. In *Van Arsdall,* the prosecution did not dispute that it had earlier agreed to dismiss a criminal charge against the witness. *Id.* at 676, 106 S.Ct. at 1433–34. The Supreme Court recognized that this potentially gave rise to witness bias, a classic ground for impeachment.

Here the disputed line of questioning would have impeached Walker's credibility only if it would have given rise to a reasonable inference that Walker testified falsely when he said that he had suffered no adverse effects from drug abuse. Such an inference arises only if there is some nexus between Walker's drug abuse and his gastro-intestinal ailment. According to Dr. Tuchsen, this nexus was, at best, very doubtful. Thus, this line of cross-examination would have been only slightly, if at all, probative of Walker's untruthfulness. In our view, the trial court reasonably concluded that the unfair prejudice to the State arising out of the admission of evidence of Walker's drug dealing and drug abuse outweighed its negligible probative value. *Cf. Sanchez,* 103 N.M. at 27, 702 P.2d at 347 (quoting *Davis v. Alaska,* 415 U.S. 308, 320, 94 S.Ct. 1105, 1112, 39 L.Ed.2d 347 (1974)).

Meadors argues on appeal that the jury should have been informed that a portion of Walker's hospital stay was attributable to his gastro-intestinal illness and that, because this evidence was excluded, the jury probably inferred that the entire hospital stay resulted from the burns. However, there was no testimony regarding the overall

---

8. Delaware Rule of Evidence 403 is virtually identical to both SCRA 1986, 11–403 (Repl. Pamp.1994) and Federal Rule of Evidence 403.

*See Van Arsdall,* 475 U.S. at 676 n. 2, 106 S.Ct. at 1434 n. 2.

length of Walker's hospital stay, and the jury only heard evidence about the portion of the hospital stay that was attributable to the burn injuries. Furthermore, Dr. Tuchsen's unchallenged testimony was that the burns, which covered 60% of Walker's body, gave rise to a high probability of death and resulted in serious disfigurement. Dr. Tuchsen also testified that Walker underwent numerous skin grafting operations and that he suffered respiratory burn injuries that required him to be hooked up to a respirator for a prolonged period. In light of this unchallenged evidence, Dr. Tuchsen's further testimony regarding the gastro-intestinal illness would not have served to disprove the element of great bodily harm.

As the *Van Arsdall* Court expressly recognized, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." 475 U.S. at 679, 106 S.Ct. at 1435. Here the trial court expressed its concern that evidence regarding the victim's drug abuse was likely to prejudice the State by unduly predisposing the jury against the victim. The court balanced the minimally probative and marginally relevant drug abuse evidence against its potentially prejudicial effect and concluded, quite reasonably, that the prejudicial effect substantially outweighed its probative value. We hold that the trial court's limitation of Meadors' cross-examination was not an abuse of discretion.

## IV. Meadors' Double Jeopardy Claim

 The jury found Meadors guilty of aggravated battery, negligent use of an explosive, and negligent arson. At sentencing, Meadors argued that because the three convictions arose out of the same conduct, punishment for each of these convictions would unconstitutionally subject him to double jeopardy.[9] The trial court agreed with Meadors that it could not punish him for both negligent use of an explosive and negligent arson. Accordingly, the court "merged"[10] those two offenses for punishment purposes. The court sentenced Meadors to four years imprisonment for aggravated battery and two years imprisonment for negligent arson. On appeal, Meadors argues that he can only be punished for one of these offenses, and that the trial court's sentence unconstitutionally subjected him to multiple punishments for the same offense.

In *Swafford*, this Court analyzed in detail the protections against multiple punishments that are embodied in the Double Jeopardy Clause.[11] The defendant's convictions for criminal sexual penetration, incest, and assault with intent to commit a felony arose out of the same criminal transaction, and on appeal he argued that he had been punished more than once for the same offense. *Swafford* began its analysis by noting that there are two distinct contexts in which the multiple punishment issue arises: (1) where the defendant is charged with multiple violations of a single criminal statute; and (2) where the defendant is charged with violations of multiple criminal statutes. 112 N.M. at 8, 810 P.2d at 1228. Like this appeal, *Swafford*

9. The Fifth Amendment's Double Jeopardy Clause provides three different protections. It protects against (1) a subsequent prosecution following acquittal; (2) a subsequent prosecution following conviction; and (3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

10. The trial court's sentencing order spoke of the "merger" of the crimes for sentencing purposes. Merger is actually a common law doctrine for analyzing multiple punishment issues that has not been adopted in New Mexico. *Swafford*, 112 N.M. at 12–13, 810 P.2d at 1232–33; *see also*

*State v. Kersey*, 120 N.M. 517, 522 n. 2, 903 P.2d 828, 833 n. 2 (1995). However, because Meadors did not challenge the trial court's use of the merger doctrine, we need not address the issue. Accordingly, for purposes of our double jeopardy analysis, we assume that, in addition to aggravated battery, Meadors was only punished for one negligent crime, negligent arson.

11. This Court has consistently held that the double jeopardy clause of the New Mexico Constitution, *see* art. II, § 15, affords the same protection against multiple punishments as the Double Jeopardy Clause found in the Fifth Amendment to the Federal Constitution. *See Swafford*, 112 N.M. at 7 n. 3, 810 P.2d at 1227 n. 3.

involved the latter and referred to it as a "double description" case. *Id.*

The *Swafford* Court articulated a two-part test for determining whether convictions under different criminal statutes constitute multiple punishments. The first inquiry is whether the conduct giving rise to the different charges is unitary. *Id.* at 13, 810 P.2d at 1233. Whether conduct is unitary depends upon whether the "two events are sufficiently separated by either time or space" as well as the "quality and nature of the acts or . . . the objects and results involved." *Id.* at 13–14, 810 P.2d at 1233–34. The *Swafford* Court held that, under the facts of that case, the crimes of assault and rape were not unitary because evidence indicated that the defendant had bound the victim, struck her several times, and verbally abused her before sexually assaulting her. On the other hand, the Court found that the crimes of incest and rape were unitary because "the same conduct [i.e. the sexual contact] precipitated both the incest and [rape] offenses." 112 N.M. at 15, 810 P.2d at 1235.

We agree with Meadors that there was absolutely no separation of time or place; all of the charges and convictions arose out of the same conduct of dousing Walker with gasoline and lighting him on fire. Accordingly, we conclude that the conduct which gave rise to all three convictions was unitary, and we move on to *Swafford*'s second prong. *See* 112 N.M. at 14, 810 P.2d at 1234; *State v. Gonzales,* 113 N.M. 221, 224, 824 P.2d 1023, 1026 (1992).

Under the second prong of the *Swafford* analysis, the trial court must determine whether the legislature intended to create separately punishable offenses. 112 N.M. at 14, 810 P.2d at 1234. The first analytical step under the second prong is to consider whether there is a clear expression of legislative intent to create separately punishable offenses. Both parties to this appeal seem to concede—and we agree—that there is no such clear expression here. We therefore proceed to the next step, which is an analysis of the statutory elements of the crimes pursuant to *Blockburger.* Unless each crime contains a statutory element that the other does not, one offense "subsumes" the other,

and there cannot be multiple punishments. *Id.* Applying the *Blockburger* analysis, we find that the crime of aggravated battery includes an element—intent to injure—that the crime of negligent arson does not include. Likewise, conviction for negligent arson requires proof that the defendant either recklessly started a fire or recklessly caused an explosion, neither of which are statutory elements of battery. Thus, a presumption arises that the legislature intended to punish these offenses separately. However, before examining whether Meadors has rebutted this presumption, we will consider Meadors' argument regarding *State v. Rodriguez,* 113 N.M. 767, 833 P.2d 244 (Ct.App.), *cert. denied,* 113 N.M. 636, 830 P.2d 553 (1992).

In *Rodriguez,* the Court of Appeals faced the issue of whether the offenses of arson and dangerous use of explosives should be punished separately. *Id.* at 769, 833 P.2d at 246. Applying *Swafford*'s methodology, the Court concluded that the conduct giving rise to both offenses was unitary. The Court also determined that there was no clear expression of legislative intent to punish the offenses separately. *Id.* at 770, 833 P.2d at 247. At this point the *Rodriguez* Court encountered a problem that *Swafford* had not fully addressed.

In considering whether each statutory offense included an element that the other did not, the *Rodriguez* Court noted that both of the statutes were "compound criminal statutes written in the alternative." *Id.* For example, the offense of dangerous use of an explosive consists of "maliciously exploding, attempting to explode *or* placing any explosive with the intent to injure, intimidate *or* terrify another, *or* to damage another's property." NMSA 1978, § 30–7–5 (Repl. Pamp.1994) (emphasis added). The *Rodriguez* Court recognized that, depending upon which version of the offense it considered, it came out with different statutory elements and different results under the *Blockburger* test. The *Rodriguez* Court also noted that there was no way to determine upon which alternative elements the jury relied because the jury instructions were also written in the alternative and the verdict forms were general rather than special. *Rodriguez,* 113 N.M.

at 771, 833 P.2d at 248. To resolve this predicament, the Court of Appeals looked at the legal theory of the case and "[d]isregard[ed] the inapplicable [statutory] elements." *Id.* at 772, 833 P.2d at 249. The Court of Appeals then found that "the remaining elements of arson and dangerous use of explosives are identical." *Id.* Accordingly, the Court ruled that the offense of arson subsumed the offense of dangerous use of an explosive, and multiple punishment was therefore prohibited.

The *Rodriguez* Court then applied this same methodology to the offenses of arson and aggravated assault, this time with a different result. The aggravated assault statute lists seven different alternative bases for conviction. After examining the theory of the case and disregarding six of the seven alternative bases for conviction, the Court determined that the statutory offenses of arson and aggravated assault each included a statutory element not found in the other. *Id.*

■ While we approve of the *Rodriguez* Court's method of analysis, we disagree with Meadors that, under *Rodriguez,* the offense of aggravated battery subsumes the offense of negligent arson. In his brief to this Court, Meadors argues:

Ultimately, the Court in *Rodriguez* found that aggravated assault did not merge with the crime of arson, because given the facts of that case it was clear that the arson involved the intent to damage property while the assault involved the intent to injure a human being. . . . Given the facts in this case, both the arson and the aggravated battery must have involved intent to injure a human being. Without knowing whether the defendant was convicted on one theory or the other or both, it must be assumed that the jury convicted the defendant under the theory which is more likely given the facts of the case.

This argument embodies an incorrect application of *Rodriguez* in that it assumes that if the same element (in this case intent to injure a person) appears in both crimes, then one crime is subsumed within another. This is neither a correct statement of *Rodriguez* nor of *Blockburger.* Under *Blockburger,* one offense is subsumed within the other unless each statutory offense includes an element not included in the other. Even if we assume, as Meadors urges, that the jury based both convictions upon the intent to injure another person rather than the intent to destroy property, it does not affect our conclusion that aggravated battery *always* includes a statutory element that is never a statutory element of negligent arson and that negligent arson *always* includes a statutory element that is never an element of aggravated battery.

■ We therefore need not consider the basis for the jury's conclusions. It is only when one offense might not include a statutory element that is not an element of the other that we look at the jury's verdicts. *See Rodriguez,* 113 N.M. at 771–72, 833 P.2d at 248–49; *cf. State v. Fuentes,* 119 N.M. 104, 107, 888 P.2d 986, 989 (Ct.App.1994) (concluding that "the central elements of robbery, even when dissected under a *Franklin/Rodriguez* analysis, do not subsume the elements of aggravated battery"), *cert. denied,* 119 .N.M. 168, 889 P.2d 203 (1995).

■ Having concluded that a presumption of legislative intent to punish the offenses separately arises, we now turn to the final step in the *Swafford* analysis, which is a determination of whether Meadors has rebutted this presumption. A defendant can rebut this presumption with a showing of contrary legislative intent as evidenced by the " 'language, history and subject of the statutes'; . . . the particular evil addressed by each statute; . . . whether the statutes are . . . violated together; comparing the amount of punishment inflicted for a violation of each statute; and examining other relevant factors." *Gonzales,* 113 N.M. at 225, 824 P.2d at 1027 (quoting *Swafford,* 112 N.M. at 14, 810 P.2d at 1234). In our view the aggravated battery statute protects against the social evil that occurs when one person intentionally physically attacks and injures another. In contrast, the negligent arson statute guards against the harm to people and property that can arise when a person starts fires or uses explosives carelessly. We also find nothing in the statutory language of any of these statutes that indicates that the legislature intended not to punish negligent arson sepa-

rately from battery. Moreover, we find no indication that the legislature intended that one of these offenses should be a "base statute" of which the other is simply a more aggravated form. *See Fuentes*, 119 N.M. at 108–09, 888 P.2d at 990–91 (citing *People v. Robideau*, 419 Mich. 458, 355 N.W.2d 592, 604 (1984)). We conclude that Meadors has failed to rebut the presumption that the legislature intended to punish the offense of aggravated battery separately from the offense of negligent arson. We therefore affirm the trial court's sentence.

## V. CONCLUSION

We conclude that on these facts the trial court did not err in instructing the jury on aggravated battery as a lesser-included offense of attempted murder, in restricting defense counsel's cross-examination of the victim, or in sentencing Meadors for two offenses. The judgment of the trial court is therefore affirmed.

**IT IS SO ORDERED.**

BACA, C.J., and FROST, J., concur.

RANSOM, J., specially concurring.

FRANCHINI, J., not participating.

RANSOM, Justice (specially concurring).

I specially concur to acknowledge that the gratuitous reference in *Henderson* to the essential-element test was not well thought out by me as the author of that opinion. 116 N.M. at 541, 865 P.2d at 1185. Under no view of the evidence in *Henderson* was indecent exposure the highest degree of the crime committed. *See State v. Henderson*, 116 N.M. 541, 543, 865 P.2d 1185, 1187 (Ct. App.1987) (recounting facts before the Court). Therefore, what was a secondary issue—Henderson's entitlement to an instruction on a lesser included offense—should have ended with citation to *State v. Escamilla*, 107 N.M. 510, 512, 760 P.2d 1276, 1278 (1988) (holding instruction on lesser included offense appropriate when some view of the evidence would sustain a finding that the lesser offense was the highest degree of crime committed). The strict-elements test satisfies double-jeopardy requirements, the

cognate approach satisfies notice requirements of due process, and, when the lesser offense may be found to be the highest degree of crime committed, no more than the cognate approach should be required to entitle a defendant to the jury's consideration of an offense less than those charged. In the latter circumstance, not present in *Henderson*, the defendant should not be required to have guilt or innocence decided, all or nothing, based on the greater offense. There is a legitimate concern that conviction of the greater offense may result because acquittal is an alternative that is unacceptable to the jury. Accordingly, the highest-degree-of-crime test perhaps should be determinative of the defendant's right to an instruction on a lesser offense.