**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: April 3, 2014

Docket No. 31,008

STATE OF NEW MEXICO,

       Plaintiff-Appellee,

v.

CASEY JIM,

       Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF McKINLEY COUNTY
Grant L. Foutz, District Judge

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Adrianne R. Turner, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**HANISEE, Judge.**

**{1}**    Casey Jim (Defendant) was convicted of second degree murder after being a participant in the beating and stabbing death of Tyrone White (Victim). Defendant argues his conviction must be reversed because: (1) he was entitled to a jury instruction permitting the jury to consider the step down crime of voluntary manslaughter; (2) the jury should have been instructed to consider whether alcohol intoxication negated his capacity to form the specific intent required for accessory liability; (3) the district court violated Defendant's

1

right to confront the witnesses against him when it admitted the transcript of Defendant's confession into evidence; (4) the district court fundamentally erred when it gave a "shotgun instruction" to the jury; (5) trial evidence was insufficient to establish that Defendant intended to kill Victim; and (6) Defendant's trial counsel was ineffective. We affirm.

## BACKGROUND

**{2}** The facts of this case are largely undisputed. After consuming a large quantity of alcohol on October 10, 2009, Defendant, accompanied by his brother Kevin and a man named Isaac, walked along a ditch near where Kevin had been stabbed several weeks prior. As they discussed the stabbing, they came upon Victim sitting with a woman with whom they were familiar. Kevin and Isaac began punching and kicking Victim, and Defendant later admitted to punching Victim one time as well. During the attack and upon Kevin's request, Defendant provided Kevin with the knife used to fatally stab Victim. In the midst of the altercation, Defendant's hand was cut. Victim later died while undergoing medical treatment from the injuries Kevin, Isaac, and Defendant collectively inflicted upon him.

**{3}** After his arrest, police conducted an interview during which Defendant maintained that he remembered little of what took place due to his high level of intoxication. When one police detective described to Defendant the sequence of events as reported to them by witnesses to the assaults that led to Victim's death, Defendant stated, "I'm guessing that's what happened and I'm pretty sure that is how it went down. . . . I believe her. She was sober. She saw everything." Defendant was subsequently charged with first degree murder and convicted at trial of the lesser included offense of second degree murder, from which he now appeals.

## DISCUSSION

**{4}** Although Defendant organizes the issues he presents on appeal differently in his brief in chief, for clarity and brevity we address each as set out below.

## I. JURY INSTRUCTIONS

**{5}** Defendant appeals the district court's denial of Defendant's request to submit both a voluntary intoxication and voluntary manslaughter instruction to the jury. On appeal, we review the propriety of a jury instruction, given or denied, under a de novo standard. *State v. Munoz*, 1998-NMSC-041, ¶ 8, 126 N.M. 371, 970 P.2d 143. "We view the evidence in the light most favorable to the giving of the requested instruction." *State v. Hill*, 2001-NMCA-094, ¶ 5, 131 N.M. 195, 34 P.3d 139.

### A. The District Court Did Not Err in Refusing to Submit Defendant's Requested Instruction for Voluntary Intoxication to the Jury

**{6}** Defendant argues that the district court committed error when it refused his request

that the jury be instructed as to UJI 14-5111 NMRA in specific reference to accessory liability. If then given, this instruction would have permitted the jury to consider "whether or not [D]efendant was intoxicated from the use of alcohol and, if so, what effect this had on [D]efendant's ability to form the intent to help, encourage[,] or cause the crime of murder to be committed." According to Defendant, this instruction should have been given because voluntary intoxication is a defense to a specific intent crime and accessory liability is a specific intent crime. Indeed, a voluntary intoxication instruction had been given by the district court as to the crime of conspiring to commit first degree murder, of which Defendant was acquitted. In arguing that the instruction was again appropriate in the context of accessory liability for the step-down crime of second degree murder, Defendant relies on both the definition of a specific intent crime and UJI 14-2822 NMRA, addressing liability as an aider and abettor to an underlying crime. Defendant correctly points out that a specific intent crime is one in which the defendant intends "to do some further act or achieve some additional consequence[.]" *State v. Bender*, 1978-NMSC-044, ¶ 8, 91 N.M. 670, 579 P.2d 796. Under UJI 14-2822, the State must prove, among other elements, that "[D]efendant intended that the crime be committed."

**{7}**     The State agrees that voluntary intoxication is a defense to specific intent crimes. *See State v. Garcia*, 2011-NMSC-003, ¶ 35, 149 N.M. 185, 246 P.3d 1057 ("A finding of voluntary intoxication provides a defense to specific intent crimes where the intoxication is to such a degree as would negate the possibility of the necessary intent." (internal quotation marks and citation omitted)). It argues, however, that the district court's denial of Defendant's request was proper because, in this case, Defendant's liability as an accessory depended on whether he intended that the principal crime of second degree murder be committed. It maintains that because the requisite mental state for second degree murder is that the defendant had knowledge that an act creates a strong probability of death or great bodily harm to another, and is thus a general intent crime, intoxication is not an available defense for either the principal or the accessory. *See State v. Campos*, 1996-NMSC-043, ¶ 39, 122 N.M. 148, 921 P.2d 1266 (holding that "second[]degree murder [is] a general[]intent crime for which intoxication is not a defense").

**{8}**     New Mexico cases have held that "an accessory must share the criminal intent of the principal." *State v. Carrasco*, 1997-NMSC-047, ¶ 18, 124 N.M. 64, 946 P.2d 1075; *see State v. Ochoa*, 1937-NMSC-051, ¶ 32, 41 N.M. 589, 72 P.2d 609 ("To aid and abet another in a crime one must share the intent or purpose of the principal" (internal quotation marks and citation omitted)); *State v. Montes*, 2007-NMCA-083, ¶ 33, 142 N.M. 221, 164 P.3d 102 (stating that "an accomplice must have the same intent as the principal"). Thus, the mens rea required to convict a principal in an underlying crime is the same required to convict an accomplice. *See State v. Marquez*, 2010-NMCA-064, ¶¶ 12-13, 148 N.M. 511, 238 P.3d 880 (stating that the requisite mens rea for homicide or great bodily injury by vehicle is conscious wrongdoing, and in order to prove accessory liability for this crime, "it would be necessary for the [s]tate to demonstrate that [a d]efendant encouraged and shared the intent of conscious wrongdoing with [the principal] to the extent that it escalated to a partnership in the enterprise"); *State v. Martinez*, 1973-NMCA-075, ¶ 7, 85 N.M. 198, 510 P.2d 916

3

(noting that where the necessary intent to convict the principal is to "injure or defraud," conviction of an accessory requires proof of an "intent to injure or defraud").

**{9}** The proposition that the same mens rea is required to convict both the principal and the accomplice to a crime was most recently recognized in *State v. Perry*, where this Court affirmed the district court's rejection of the defendant's proposed modified jury instruction for accomplice liability. 2009-NMCA-052, ¶ 45, 146 N.M. 208, 207 P.3d 1185. Like Defendant, the defendant in *Perry* was convicted of second degree murder. *Id.* ¶ 6. The defendant's proposed modified instruction contained language instructing the jury that accomplice liability required that "the defendant's intent must be the intent that is specified in the specific elements instruction for the crime itself." *Id*. ¶ 42. After the district court rejected this language, the defendant argued that the requested modification was necessary to prevent the jury from convicting him on the basis of a "lesser intent than what the crime requires." *Id*. (internal quotation marks omitted). During deliberations, the jury sent two questions to the district court regarding the requisite intent for accomplice liability, to which the court responded "[p]lease review the elements instruction for each crime . . . in combination with all other instructions." *Id.* ¶ 44 (omission in original).

**{10}** On appeal, this Court noted that our Supreme Court in *Carrasco*,1997-NMSC-047, ¶ 7, explained that "an accessory must share the criminal intent of the principal[,]" and that UJI 14-2822 "incorporates the intent requirement and correctly states the standard for a finding that a defendant is guilty as an accessory." *Perry*, 2009-NMCA-052, ¶ 43 (internal quotation marks and citation omitted). Given this precedent, this Court held that "we presume that the jury looked to the element instruction for each crime in order to determine the intent required for the underlying crime." *Id.* ¶ 45. Thus, the intent required for conviction as an accessory is the same level of intent contained in the element instruction for the underlying crime. *Id.* ¶¶ 45-46.

**{11}** This also means the requisite mental state required to support conviction on the basis of accomplice liability is not uniform for all underlying crimes. To the contrary, an accessory's mens rea incorporates specific intent only when the underlying crime is a specific intent crime. Likewise, when the underlying crime is a general intent crime, the accomplice need only manifest a general intent to justify a conviction. *See* Baruch Weiss, *What Were They Thinking?: The Mental States of the Aider and Abettor and the Causer Under Federal Law*, 70 Fordham L. Rev. 1341, 1410 (2002) (discussing the applicability of diminished capacity defenses in the context of "the derivative approach" to the mens rea required of accomplices in which "the mental state for the aider and abettor is the same as that for the principal"). We conclude that because second degree murder requires a mens rea of "[knowledge that his] acts create a strong probability of death or great bodily harm to that individual or another," *Campos*, 1996-NMSC-043, ¶ 24 (internal quotation marks and citation omitted), Defendant's conviction rested on proof that he shared this degree of mens rea with the principal offender. Since second degree murder is a general intent crime, accessory to second degree murder carries the same general intent requirement. *See id.* ¶¶ 38-39; Weiss, *supra*, at 1423-24 ("Thus, a defendant charged with being an [accessory] to

4

murder is permitted to raise the [intoxication] defense in connection with a charge of first degree murder . . . but not in connection with the lesser included offense of second degree murder, which is a general intent crime."). We hold the district court did not err in denying Defendant's request for the intoxication instruction.[1]

## B.  The District Court Did Not Err in Rejecting Defendant's Tendered Jury Instruction for Voluntary Manslaughter

**{12}**     Defendant asserts that the district court's refusal to instruct the jury on his proffered voluntary manslaughter instruction, a lesser included offense of second degree murder, constitutes reversible error. "A defendant is entitled to an instruction on a lesser included offense when there is some view of the evidence pursuant to which the lesser offense is the highest degree of crime committed, and that view is reasonable." *State v. Gaitan*, 2002-NMSC-007, ¶ 11, 131 N.M. 758, 42 P.3d 1207 (alteration, internal quotation marks, and citation omitted). Voluntary manslaughter is a lesser included offense of second degree murder, *State v. Jernigan*, 2006-NMSC-003, ¶ 22, 139 N.M. 1, 127 P.3d 537, and is defined as "manslaughter committed upon a sudden quarrel or in the heat of passion." NMSA 1978, § 30-2-3(A) (1994). Voluntary manslaughter is distinct from second degree murder by its inclusion of the element of sufficient provocation. *Gaitan*, 2002-NMSC-007, ¶ 11. Sufficient provocation is "any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions" and "affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition." *Jernigan*, 2006-NMSC-003, ¶ 24 (internal quotation marks and citation omitted). However, "the provocation is not sufficient . . . if an ordinary person would have cooled off before acting." *State v. Reynolds*, 1982-NMSC-091, ¶ 9, 98 N.M. 527, 650 P.2d 811. Accordingly, a defendant is entitled to a voluntary manslaughter instruction only if there is some evidence in the record indicating that he was sufficiently provoked under the facts of the case. *Gaitan*, 2002-NMSC-007, ¶ 11.

**{13}**     Defendant contends that at trial the State explained Victim's murder as a gang motivated retaliation intended to avenge the attack on Kevin that occurred within the preceding weeks. Because the attack on Victim was motivated by the prior incident and Defendant's involvement occurred in the midst of a fight instigated by Kevin and Isaac, Defendant argues that the jury "could have found that [Defendant] experienced the requisite degree of provocation to support his requested voluntary manslaughter instruction." According to Defendant, if the jury believed that Defendant's actions in the stabbing were "subsequent to, and flowed from that provocation, . . . voluntary manslaughter would be the highest degree of the crime committed."

---

[1]We note that Defendant's third point of appeal is that there was insufficient evidence that he intended to kill Victim. Because of our ruling that a mens rea of general intent is all that is required to aid and abet the general intent crime of second degree murder, Defendant's contention regarding lack of evidence as to his specific intent must fail.

5

**{14}** Initially, we note that Defendant does not clearly pinpoint the event that he contends to be the source of the provocation. We interpret Defendant's argument to identify one of three possible sources of the provocation: (1) Defendant was provoked by Kevin and Isaac's instigation of the fight; (2) Defendant perceived Victim to be a member of the rival gang responsible for stabbing Kevin, thus, provoking him to act; or (3) Victim's reaction to the instant attack provoked Defendant's response. None of these scenarios, however, establish sufficient provocation to support issuance of a voluntary manslaughter instruction.

**{15}** "It is settled law that the victim must be the source of the provocation." *State v. Munoz*, 1992-NMCA-004, ¶ 12, 113 N.M. 489, 827 P.2d 1303. The appropriate inquiry is whether there is evidence that Victim individually provoked Defendant. *See State v. Manus*, 1979-NMSC-035, ¶ 16, 93 N.M. 95, 597 P.2d 280, *overruled on other grounds by Sells v. State*, 1982-NMSC-125, 98 N.M. 786, 653 P.2d 162. Furthermore, the asserted provocation cannot result from an intentionally instigated assault on a victim. *Gaitan*, 2002-NMSC-007, ¶ 13. The record here does not indicate any factual provocation of Defendant that meets the standard established by our case law. In fact, in his statement to police, Defendant told the interviewing detective that prior to the attack, "[Victim] was just sitting there. This is what I feel bad about [because Victim] was just sitting there . . . minding his own business and drinking his own beer." Absent any evidence of provocation in the record, the district court did not err in refusing to instruct the jury on voluntary manslaughter.

**II.     The District Court Did Not Err in Admitting a Transcript of Defendant's Confession Into Evidence**

**{16}** Defendant argues that the district court erred when it admitted the transcript of his statement to law enforcement into evidence during trial because it contained testimonial statements of absent witnesses. Specifically, during the interview the detective told Defendant what witnesses said had happened and those witnesses were unavailable to testify at trial. Defendant asserts that this action violated his right under the Sixth Amendment to the United States Constitution to "be confronted with the witnesses against him." U.S. Const. amend. VI. We review de novo a defendant's contention that evidence admitted at trial violates the Confrontation Clause. *State v. Martinez*, 1996-NMCA-109, ¶ 14, 122 N.M. 476, 927 P.2d 31. "The Sixth Amendment to the United States Constitution provides that, in criminal prosecutions, the accused shall have the right to confront the witnesses against him." *State v. Casaus*, 1996-NMCA-031, ¶ 22, 121 N.M. 481, 913 P.2d 669. "The Confrontation Clause is applicable to the states through the Fourteenth Amendment." *Martinez*, 1996-NMCA-109, ¶ 9.

**{17}** When a witness is unavailable and a defendant has not had an opportunity to cross examine that witness, "out-of-court statements [of the missing witnesses] that are testimonial are inadmissible even if they meet an exception to the hearsay rules." *State v. Soliz*, 2009-NMCA-079, ¶ 8, 146 N.M. 616, 213 P.3d 520. Both this Court and the United States Supreme Court have held that in lieu of suppressing in entirety a document containing such testimonial statements, the district court instead should review the evidence at issue in a line-

by-line manner and redact those portions that are testimonial in nature. *Id.* ¶ 14; *see Davis v. Washington*, 547 U.S. 813, 829 (2006). For a district court to abandon this responsibility and instead declare the entire statement to be inadmissible is error. *Soliz*, 2009-NMCA-079, ¶ 14.

**{18}** The parties do not dispute that references to witnesses' statements contained within the transcript of Defendant's interview with police are testimonial in nature. We therefore solely resolve whether the admission of the transcript into evidence was constitutionally improper under the circumstances of this case. We determine that here it was not and that Defendant's Sixth Amendment right to confront was therefore not violated.

**{19}** In a motion in limine filed prior to trial, Defendant moved to exclude or redact portions of the transcript of his police interview that related to statements of unavailable witnesses. Defendant stated that not only did these statements require exclusion under *Crawford v. Washington*, 541 U.S. 36, 68 (2004) (holding that testimonial out-of-court statements given by witnesses who are unavailable at trial are inadmissible under the Confrontation Clause of the Sixth Amendment unless the defendant had a prior opportunity to cross-examine those witnesses), but also were inadmissible because the evidence constituted "hearsay upon hearsay[.]" Addressing the issue during a trial recess, the State and Defendant offered proposed redactions to the district court. Defendant sought to redact all references to absent witness statements that were detrimental to his case, yet proposed to retain such testimonial statements that he thought would benefit his defense. The State expressed concern that such piecemeal redaction would be both unfair and could mislead or confuse the jury. Yet it decided not to "object to any of [the statements Defendant wanted to] come in," despite their hearsay nature, if the district court contemporaneously instructed the jury that "there are references in this statement to other witnesses' statements. Subpoenas have been issued for all those witnesses in this case. Through no fault of the State . . . or the defense, some of those witnesses are unavailable for testimony." Based on our review of the record, it appears that both the State and Defendant recognized that the unavailable witness statements contained in the transcript were inadmissible hearsay. Defendant himself recognized in his initial motion in limine and did not state otherwise during discussion of the issue that each statement referenced by the detectives during Defendant's police interview constituted inadmissible hearsay. The State could have objected to these statements, yet agreed not to if the jury was contemporaneously instructed that neither party was to blame for the witness absence.

**{20}** When counsel for Defendant asked the State to clarify its position as to the hearsay witness statements, the State replied that it was not opposed to: (1) admission of the entire statement into evidence, (2) redaction of all references to statements made by each unavailable witness, or (3) Defendant's proposed partial redaction, admitting testimonial witness statements that the defense favored and excluding those it considered to be incriminatory, if accompanied by the State's proposed limiting instruction. Dissatisfied when directed by the district court to select from the State's options, Defendant sought admission of the entire, unredacted transcript into evidence. Defense counsel stated that, "if it's all or

nothing, let's just go with the truth and let's let it all, let's let everything else in." When trial resumed the following morning, Defendant moved to exclude the transcript of his statement in its entirety, asserting that its admission would violate Defendant's confrontation rights pursuant to *Crawford*. Absent total exclusion, Defendant again plainly expressed his preference that the entire statement be admitted into evidence, a request to which the State did not object and that the district court accommodated. Despite his dissatisfaction at the time with the opportunity to redact all statements of absent witnesses, or the State's willingness to forgo its own available hearsay objection as to those statements if the statements were accompanied by a limiting instruction, Defendant elected to allow the jury to hear the statement in its entirety. Defendant now contends that admission of the transcript was error because it deprived him of "an opportunity to cross-examine" the witnesses referenced during his transcribed police interview.

**{21}**     We conclude that the option to redact all references to unavailable witness statements contained in the police interview transcript appropriately safeguarded Defendant's Sixth Amendment right to confront the witnesses against him. *See Soliz*, 2009-NMCA-079, ¶ 14 (stating that redaction is the proper tool to balance the need to exclude inadmissible content while retaining the admissible portions of a statement in a manner that comports with rules of evidence). Defendant essentially argues that he should have been permitted to redact the incriminatory witness statements while retaining those that were exculpatory without being subject to the State's proffered limiting instruction. There are two responses to this assertion. First, his Sixth Amendment right to confront the witnesses against him does not include a right to compel admission of otherwise inadmissible hearsay statements. *See State v. Lopez*, 2000-NMSC-003, ¶ 15, 128 N.M. 410, 993 P.2d 727 (stating that in New Mexico, the Confrontation Clause only permits the admission of an unavailable witness's hearsay statement if it falls within a firmly rooted hearsay exception or if there are "particularized guarantees of trustworthiness equivalent to those associated with a firmly rooted [hearsay] exception." (internal quotation marks and citation omitted)). Defendant himself recognized that these witness statements were "hearsay upon hearsay" requiring exclusion from evidence in his motion in limine. While it is true that only a criminal defendant retains the right to confront witnesses, *see* U.S. Const. amend. VI, the State is entitled to object to inadmissible hearsay. *See* Rule 11-802 NMRA ("Hearsay is not admissible except as provided by these rules or by other rules adopted by the Supreme Court or by statute."). That the State was nonetheless willing to waive its objection to the statements Defendant wished to admit, thereby creating a choice that Defendant now implies was unfairly compulsory, mischaracterizes the circumstances by which Defendant elected to waive his otherwise valid right to redaction, and thereby, his Sixth Amendment right to confront.

**{22}**     Second, it appears that Defendant waived his constitutional objection and invited the error. The record clearly reflects that it was Defendant's request that, absent his preferred remedy of total exclusion or piecemeal redaction, the district court entered the unredacted transcript into evidence. It is well established that a party may not invite error and then proceed to complain about it on appeal. *State v. Dominguez*, 2008-NMCA-029, ¶ 13, 143 N.M. 549, 178 P.3d 834; *see McCauley v. Ray*, 1968-NMSC-194, ¶ 11, 80 N.M. 171, 453

8

P.2d 192 ("It is too well established for dispute that a party litigant may not invite error and then take advantage of it." (internal quotation marks and citation omitted)); *see also Soliz*, 2009-NMCA-079, ¶ 14 (holding that redaction, in lieu of suppression of an entire statement, is appropriate remedy when faced with testimonial statements of unavailable witnesses). The district court did not err in refusing to wholly suppress the transcript, nor did it commit error by not redacting the transcript pursuant to Defendant's own request and in a manner which would have compelled the State to suffer the admission of inadmissible hearsay without a right of objection.

### III. The District Court Did Not Err in Asking the Jury for a Numerical Breakdown and in Directing the Jury to Continue Deliberations for One Hour

**{23}** Defendant contends that the district court erred in requesting the jury to provide a numeric breakdown of juror division following the foreperson's note to the district court indicating the possibility that the jury could be unable to reach a unanimous verdict. Defendant also maintains that this error was exacerbated when the district court instructed the jury to continue deliberations for an additional hour. Because Defendant did not contemporaneously object to the district court's communication with the jury, this point of appeal was not properly preserved. *State v. Romero*, 2013-NMCA-101, ¶ 19, 311 P.3d 1205, *cert. denied*, 2013-NMCERT-009, 311 P.3d 452. Accordingly, we review the district court's actions solely for fundamental error. *Id.* Fundamental error exists when a conviction "shock[s] the conscience" due to the seeming indisputability of a defendant's innocence or where allowance of a conviction to stand would otherwise be fundamentally unfair. *State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted). Defendant does not assert that his innocence is indisputable; thus, "he must demonstrate that the cumulative effect of the district court's actions and the circumstances under which they arose were so egregious and so unduly coercive on the jury as to cause the jury to abandon its honest convictions." *Romero*, 2013-NMCA-101, ¶ 20 (alteration, internal quotation marks, and citation omitted).

**{24}** Here, after the jury retired to deliberate, the jury foreperson sent a note to the district court inquiring as to what the jury should do if it could not reach a unanimous decision. After speaking with counsel for the State and Defendant, neither of whom voiced objection, the district court asked the jury foreperson to provide a numeric breakdown of juror votes, excluding information regarding whether the votes favored conviction or acquittal. Also, the district court asked whether further deliberation would be helpful. The foreperson responded that further time for deliberations would be of assistance and notified the court that ten of the twelve jurors were in agreement. The district court then instructed the jury to deliberate another hour, after which the court proposed to inquire whether progress had been made. Within the hour, the jury returned with a unanimous guilty verdict of second degree murder. Defendant contends the court's inquiries were unduly coercive and amounted to an impermissible "shotgun instruction."

**{25}** "[W]hile inquiry into the numerical division of the jury is not to be encouraged, it is

9

not error per se. Such inquiries are reversible error only when shown to have a coercive effect on the jury." *Id.* ¶ 22 (alterations, internal quotation marks, and citation omitted). We analyze three considerations when assessing whether a district court's request for a numerical breakdown had a coercive effect on a jury: "(1) whether any additional instruction or instructions, especially a shotgun instruction, were given; (2) whether the district court failed to caution a jury not to surrender honest convictions; and (3) whether the district court established time limits on further deliberations with the threat of mistrial." *Id.* (alterations, internal quotation marks, and citation omitted). Generally, if the district court leaves the decision of whether to continue deliberations within the discretion of the jury, these communications are proper. *Id.*

**{26}** Here, we cannot construe the district court's communications with the jury as coercive or expressing any preference that holdout jurors should abandon their honest convictions. Despite the fact that the district court did not then instruct the jurors to preserve their honest convictions, the district court had previously provided this instruction to the jury at the outset of deliberations. Also, as we have previously recognized in cases where district courts faced similar dilemmas, the district court here "appeared to have made the inquiry so as to ascertain the probability of agreement among the jury pursuant to the court's duty to assure that a verdict is reached and in determining whether further deliberations are needed." *Id.* ¶ 23 (alterations, internal quotation marks, and citation omitted); *see State v. Rickerson*, 1981-NMSC-036, ¶ 7, 95 N.M. 666, 625 P.2d 1183. Finally, not only was the district court vigilant in ensuring that the jury foreperson knew he should not disclose whether the votes favored conviction or acquittal, the court also inquired of the foreperson as to whether he thought additional time for deliberations would be beneficial in reaching a unanimous verdict. Because the jury foreperson indicated that further time would be helpful prior to the district court issuing any instructions to continue deliberations, the court's communications bore no coercive effect on the jury such that fundamental error occurred. *See Romero*, 2013-NMCA-101, ¶¶ 23-25 (concluding that where the district court "admonish[ed] the foreperson to avoid disclosing whether the votes were for or against conviction" and inquired into whether additional deliberations would aid the jury in reaching a verdict, the district court's actions did not warrant a finding of fundamental error).

**{27}** We hold that the district court's actions were neither coercive nor amounted to issuance of a shotgun instruction. As such, there was no fundamental error.

## IV. Defendant Has Not Established a Prima Facie Case of Ineffective Assistance of Counsel

**{28}** Last, Defendant argues he received ineffective assistance of counsel based on four purported errors of his trial counsel: (1) failing to secure the testimony of witnesses to Victim's stabbing; (2) failing to obtain the trial transcripts from Kevin and Isaac's respective trials, containing testimony from those witnesses; (3) informing the district court that it was too late to find an interpreter for a juror in need of assistance and representing a mistrial as the only remedy; and (4) denying Defendant his right to testify in his own defense. "We

10

review claims of ineffective assistance of counsel de novo." *State v. Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134. There are three elements a defendant must show in order to establish a prima facie case of ineffective assistance of counsel on appeal: (1) the trial record indicates that counsel's performance was below that of a reasonably competent attorney; (2) there is no plausible, rational strategy or tactic to explain counsel's actions; (3) the conduct of counsel prejudiced the defense. *Id.* As Defendant notes in his brief in chief, where the record on appeal does not establish a prima facie case of ineffective assistance of counsel, such claims are often heard on petition for writ of habeas corpus. *Id.*

**{29}**     Three of Defendant's claims of ineffective assistance of counsel concern matters not contained in the district court record. First, Defendant contends that his trial counsel failed to obtain the trial testimony of the three witnesses who were present with Defendant at the time of the stabbing. However, the record contains no indication that these witnesses were available or able to be located at the time of the trial. In fact, Defendant himself notes that the State indicated that these "witnesses were not cooperating and they did not appear for scheduled pre-trial interviews." Defendant also asserts that his trial counsel failed to obtain the trial transcripts of two witnesses who testified in the trials of Kevin and Isaac. Again, nothing in the record apprises us of the nature or content of those witnesses' testimony and whether trial counsel's inaction was prejudicial to the defense in any way. *See State v. Grogan*, 2007-NMSC-039, ¶ 11, 142 N.M. 107, 163 P.3d 494 (stating that to establish "a claim of ineffective assistance of counsel, . . . [t]he defendant has the burden to show both incompetence and prejudice"). Finally, Defendant asserts that his trial counsel prohibited him from testifying in his own defense. There is no way for us to verify the occurrence or nonoccurrence of these conversations other than Defendant's own assertions to this Court. "While we are willing to review matters of record for prima facie evidence of ineffective assistance of counsel, we will not afford the same benefit to arguments based on matters outside the trial record." *Bahney*, 2012-NMCA-039, ¶ 49. Thus, claims such as the three Defendant asserts here are best suited for habeas corpus where the district court can develop a record specific to Defendant's claims. *See id.*

**{30}**     Defendant's remaining claim is reviewable based upon the district court record, but we disagree that this contention establishes a prima facie case of ineffective assistance of counsel. After voir dire, a juror informed the court that she had not understood the proceedings because English was not her first language, and she only held a ninth grade education. This was information she had not listed on her juror questionnaire. The juror indicated that she needed an interpreter to understand the proceedings. As a result of this discovery, defense counsel requested a mistrial. The State objected, and the district court denied Defendant's motion for a mistrial. The State then moved to dismiss the juror for cause, to which defense counsel objected on the basis that both the juror and Defendant were Navajo. As part of his objection, counsel advised the court that it was too late to obtain an interpreter for this juror because she had not understood the questioning during voir dire. The district court dismissed the juror for cause.

**{31}**     Defendant now argues that his counsel was ineffective in advising the district court

that it was too late to find an interpreter and in representing that a mistrial would be the only appropriate remedy. At the outset, we note that much of Defendant's argument appears to be focused on the lack of accommodations made to the juror prior to her dismissal. As Defendant correctly points out, it is the *district court* that is required to "make every reasonable effort to accommodate a potential juror for whom language difficulties present a barrier to participation in court proceedings." *State v. Rico*, 2002-NMSC-022, ¶ 11, 132 N.M. 570, 52 P.3d 942. As a result of the district court's inability to provide an interpreter for the juror during voir dire, defense counsel requested a mistrial as the juror was unable to understand the proceedings and later objected to her dismissal for cause due to her Navajo heritage. Defendant's assertions that these actions amount to ineffective assistance of counsel are insufficient. Defendant has not shown that these actions fell below those of a reasonably competent attorney nor that no plausible or rational strategies existed to explain defense counsel's conduct. *See Bahney*, 2012-NMCA-039, ¶ 48. Defendant has failed to establish a prima facie case of ineffective assistance of counsel. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."). If Defendant chooses to pursue this issue further, "[o]ur conclusion that [the d]efendant has failed to meet [the] burden of demonstrating a prima facie case of ineffective assistance of counsel in no way impairs [the d]efendant's ability to later bring such a claim in a habeas proceeding." *Bahney*, 2012-NMCA-039, ¶ 53.

**CONCLUSION**

{32}    For the foregoing reasons, we affirm Defendant's conviction of second degree murder.

{33}    **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**LINDA M. VANZI, Judge**