**Certiorari Denied, September 30, 2013, No. 34,202**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2013-NMCA-101**

**Filing Date:  July 31, 2013**

**Docket No. 30,607**

**STATE OF NEW MEXICO**,

 **Plaintiff-Appellee,**

**v.**

**BERNARDINO ROMERO,**

 **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, Judge**

Gary K. King, Attorney General
Yvonne Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Tania Shahani, Assistant Public Defender
Santa Fe, NM

for Appellant

**OPINION**

**HANISEE, Judge.**

**{1}**     Defendant Bernardino Romero appeals his conviction and sentence for criminal sexual contact of a minor (CSCM), under NMSA 1978, Section 30-9-13(C)(1) (2003). Defendant contends that the district court erred by (1) allowing an amendment to the indictment during the trial, (2) refusing to require the State to disclose its expert's assessment of Defendant's polygraph examination result, and (3) issuing a shotgun jury

1

instruction. We address each issue in turn and, for the reasons stated herein, affirm.

## I.  BACKGROUND

**{2}**  The facts in this case are undisputed. Defendant and Victim were neighbors. When Victim was eleven years old, she told her mother that Defendant engaged in inappropriate sexual conduct with her when she was about five or six years old. Victim subsequently repeated her assertions to a law enforcement official as well as to an investigator from the New Mexico Public Defender Department. Consistent with Victim's statements during those interviews, the State charged Defendant with two counts of criminal sexual penetration of a minor (CSPM) (counts one and two). Based on Victim's additional claim that Defendant forced her to touch his penis, the State also charged him with CSCM (count three) and a single count of aggravated indecent exposure (count four).

**{3}**  In preparation for trial, defense counsel arranged for Defendant to undergo a polygraph examination. The polygrapher asked Defendant three questions during the examination, each based on the content of Victim's interviews. He asked Defendant: (1) "Did you ever put your penis into [Victim's] vagina[?]"; (2) "Did you ever penetrate [Victim's] vagina to any extent?"; and (3) "Did [Victim] ever touch your penis with her hand?" Defendant answered each query in the negative, and his polygrapher determined that the data produced during the examination revealed to a ninety percent degree of certainty that Defendant's responses were truthful. Following disclosure of the polygraph result, the State sought and was granted a continuance in order to have its own polygraph expert analyze the results.

**{4}**  At trial, the State elected not to give notice of or call an expert witness regarding the polygraph or to offer evidence of any alternative evaluation of Defendant's polygraph result. Nor did the State disclose to Defendant any findings its own expert may have prepared. Despite being unaware of the information, if any, produced by the State's polygrapher, Defendant asserted that the State withheld relevant *Brady* material in the form of its polygrapher's opinion and during trial sought disclosure of any such evidence. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). The State responded that it was not required to disclose its expert's findings because that expert was never listed as a witness. The State further argued that disclosure was unwarranted because Defendant had not sought information regarding, or an interview with, the State's polygrapher prior to trial. The district court denied Defendant's oral motion for disclosure, finding that although the information sought was relevant, defense counsel should have specifically sought discovery or subpoenaed the State's expert before trial commenced.

**{5}**  At trial, Victim was the State's only witness able to testify regarding the specific acts of sexual abuse alleged in each count. As to count one, Victim's testimony varied in content

2

from her assertions of penetration made during interviews prior to trial. Instead, she maintained only that Defendant rubbed his "private part" against hers, making skin-on-skin contact. Following the State's presentation of evidence, Defendant sought a directed verdict dismissing all charges, noting specifically that there was insufficient evidence to support the CSPM alleged in count one. Without objection from Defendant, the State moved to amend count one to charge the lesser-included offense of CSCM based on Victim's trial testimony.

{6} Following trial, at which Defendant also testified and denied ever having sexually abused Victim, the jury deliberated approximately five-and-a-half hours before the foreperson notified the district court that the jury was "having an impossible time reaching a unanimous decision on any of the charges." The district court returned the jury to the courtroom and asked the foreperson: "Without advising the [district court] which way the vote is going, can you give me a numerical breakdown of the division[ for each count]?" The foreperson stated that the jurors were divided eleven votes to one vote on count one, six votes to six votes on count two, nine votes to three votes on count three, and eight votes to four votes on count four. The district court then inquired, "Do you think if I sent you back into the jury room to deliberate further, that you would be able to reach a verdict on one or more of these counts?" The foreperson responded, "I believe that we might be able to reach a unanimous decision on one count . . . [a]nd the rest, really not." The district court replied, "Well, I'll have you return to the jury room to continue deliberations then."

{7} Defense counsel did not immediately object to this colloquy or to the district court's instruction that the jury continue its deliberation. Approximately one-half hour later, the jury returned a guilty verdict as to the lesser-included offense of CSCM, which constituted the amended count one. The jury deadlocked with regard to counts two through four, which were subsequently dismissed by the State. Following his conviction, Defendant filed a motion for a new trial, arguing that the verdict was a product of the district court's issuance of an impermissible shotgun instruction. The court denied the motion and sentenced Defendant. This appeal ensued.

## II. DISCUSSION

### A. The District Court Did Not Err in Permitting the State to Amend the Indictment

{8} Defendant contends that his conviction should be vacated because he was prejudiced when, during trial, the district court allowed the State to amend count one from CSPM to CSCM. Defendant contends that the amendment constituted an impermissibly prejudicial modification to the indictment, which as altered failed to provide him with sufficient notice of the pending charges and therefore deprived him of a fair opportunity to prepare a defense. Because Defendant failed to raise this objection to the district court, we review only for fundamental error. Rule 12-216(B)(2) NMRA (providing an appellate court the discretion to review questions of fundamental error or fundamental rights as an exception to the preservation rule); *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621 92 P.3d 633; *State*

3

*v. Laney*, 2003-NMCA-144, ¶ 47, 134 N.M. 648, 81 P.3d 591. For an error to be deemed fundamental, it must go "to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *State v. Gallegos*, 2009-NMSC-017, ¶ 27, 146 N.M. 88, 206 P.3d 993 (internal quotation marks and citation omitted).

**{9}** In a criminal case, the defendant "is entitled to know what he is being charged with and to be tried solely on those charges. It is improper to instruct the jury as to a crime not formally charged if that crime is not a lesser included offense of the crime formally charged." *State v. Johnson*, 103 N.M. 364, 371, 707 P.2d 1174, 1181 (Ct. App. 1985). Rule 5-204(C) NMRA permits amendment of the indictment at trial only so long as the ensuing charging variation conforms with the evidence of the case and the particulars of the offense. Unless the amendment prejudices the defendant's substantial rights, it is not "grounds for . . . acquittal." Rule 5-204(C). Prejudice exists when the defendant is unable to reasonably anticipate from the indictment the nature of the proof the state will produce at trial. *State v. Marquez*, 1998-NMCA-010, ¶ 20, 124 N.M. 409, 951 P.2d 1070. In seeking acquittal, the defendant must demonstrate actual prejudice; the mere assertion of prejudice alone is insufficient to establish error warranting reversal. *Id*.

**{10}** We conclude that as to count one, CSCM is a lesser-included offense of the CSPM with which Defendant was charged. An offense is deemed to be lesser-included only if the defendant cannot commit the greater offense, as it is described in the indictment, without also committing the lesser offense. *State v. Meadors*, 121 N.M. 38, 45, 908 P.2d 731, 738 (1995). Under Section 30-9-13(A), CSCM is defined as "the unlawful and intentional touching of or applying force to the intimate parts of a minor." The statute includes the genital area within the definition of intimate parts. *Id.* As a matter of physiology, the intentional touching or the application of force to the intimate parts of a minor is inherent in the criminal sexual penetration of a minor. Here, Victim testified that the events underlying count one involved skin-to-skin genital contact, a level of contact subsumed by the nature of the penetration alleged in count one. As such, the charged penetration unavoidably entailed contact to some extent. *See State v. Paiz*, 2006-NMCA-144, ¶ 52, 140 N.M. 815, 149 P.3d 579 (analyzing an offense where, physiologically, contact and penetration overlapped based on the behavior described in the indictment). Thus, CSCM constitutes a lesser-included offense of the CSPM charge, and Defendant was on notice and could have anticipated that evidence of the CSCM would be presented at trial.

**{11}** Defendant nonetheless contends that, had he known Victim would vary her story from that which she had previously told and the district court would amend the indictment to charge CSCM with respect to count one, he would have modified the polygraph test to address questions related to the contact component of count one. Notably, the case centered around Victim's and Defendant's conflicting testimony. Defendant's use of a polygrapher therefore bore the potential to bolster his trial credibility. Moreover, Defendant asserts that in preparing his case, his understanding was that he was not entitled to the lesser-included

4

offense instruction of CSCM based on Victim's allegation of penetration and not contact. As such, Defendant explains that his polygraph test, which for accuracy purposes consisted of only three questions, was "tailored specifically to combat the charges in the indictment and [Victim]'s repeated allegations . . . that supported counts [one through three]."

**{12}** Despite the post-amendment absence of precise harmony between the trial evidence and the contents of Defendant's pretrial polygraph examination, we cannot conclude that the district court fundamentally erred in amending count one from CSPM to CSCM. The mere fact that Defendant's chosen trial tactics, including preparation of expert testimony, focused on penetration rather than the contact inherently involved in achieving penetration does not diminish the act of CSCM within the CSPM offense with which Defendant was originally charged. By being so charged, Defendant was on notice of the facts constituting the CSCM, for which he was ultimately convicted. *Meadors*, 121 N.M. at 45, 908 P.2d at 738 (holding that if the defendant could not commit the greater offense as it is described in the indictment without committing the lesser offense, he should be fully aware of the potential offenses he may face at trial and should have ample opportunity to prepare a defense).

**{13}** We conclude that Defendant was not prejudiced by the indictment's amendment, nor did the amendment constitute fundamental error under the circumstances of this case. Defendant was fairly on notice of the lesser included offense, and it was his chosen trial tactic to "gear[] his defense to eliminat[e] the CSPM charge completely." *See State v. Hester*, 1999-NMSC-020, ¶ 11, 127 N.M. 218, 979 P.2d 729 (noting that it is not the role of an appellate court to second guess trial tactics).

**B.      The District Court Did Not Err in Denying Defendant Access to Evidence Produced by the State's Polygraph Expert**

**{14}** Defendant contends that the State violated *Brady* and Rule 5-501(A)(4) NMRA when it refused to disclose information obtained from its expert regarding his assessment of Defendant's polygraph examination result. *See Brady*, 373 U.S. at 87; *see also* Rule 5-501(A)(4) (stating that polygraph results and reports are subject to disclosure by the state). In New Mexico, an assertion of a *Brady* violation is an allegation of prosecutorial misconduct. *See State v. Trujillo*, 2002-NMSC-005, ¶¶ 48, 50, 131 N.M. 709, 42 P.3d 814. We review the district court's ruling on prosecutorial misconduct for abuse of discretion because it "is in the best position to evaluate the significance of any alleged prosecutorial errors." *Id.* ¶ 49 (internal quotation marks and citation omitted). Under an abuse of discretion standard, the district court's ruling should be upheld unless it is arbitrary, capricious, or beyond reason. *State v. Balenquah*, 2009-NMCA-055, ¶ 11, 146 N.M. 267, 208 P.3d 912. In order to establish a *Brady* violation, the defendant "must show that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." *Case v. Hatch*, 2008-NMSC-024, ¶ 44, 144 N.M. 20, 183 P.3d 905 (internal quotation marks and citation omitted).

**{15}** We conclude that Defendant cannot demonstrate the materiality element of the *Brady*

analysis. "[E]vidence is material [under *Brady*] only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Case*, 2008-NMSC-024, ¶ 53 (alterations in original) (internal quotation marks and citation omitted). When we evaluate materiality under *Brady*, we look to the entire trial record to determine if the conviction was obtained in violation of due process through a trial "tainted with fundamental unfairness because certain evidence was not disclosed to the defense." *State v. Baca*, 115 N.M. 536, 541, 854 P.2d 363, 368 (Ct. App. 1993) (internal quotation marks and citation omitted). "Evidence that may first appear to be quite compelling when considered alone can lose its potency when weighed and measured with all the other evidence, both inculpatory and exculpatory." *Id.* (internal quotation marks and citation omitted).

**{16}** Even if the State's polygraph expert's findings were favorable to the defense, there is no reasonable probability that a different outcome would have resulted had the evidence been provided to Defendant. Defendant already possessed and presented evidence from his own polygraph expert showing that Defendant was truthful in denying Victim's allegations with regard to the original counts of CSPM and CSCM alleged in count three. The persuasiveness of this evidence seemingly contributed to the jury's inability to reach a unanimous decision on those charges, resulting in a mistrial as to them. Additional information or testimony from the State's polygraph expert would at best have been cumulative to that presented by Defendant's own polygrapher.

**{17}** Furthermore, with regard to the amended count one for which Defendant was convicted, Defendant concedes that the polygraph examination did not address the component of contact inherent within the originally alleged penetration. Any additional evidence derived from the State's expert would likewise fail to support Defendant's testimony with regard to that charge, just as did Defendant's own polygrapher's analysis. Thus, there is no reasonable probability that obtaining access to the State's polygraph expert would have resulted in a different trial outcome. *See Case*, 2008-NMSC-024, ¶ 54 (noting that materiality is only present if the withheld evidence introduces a reasonable doubt that did not already exist).

**{18}** We conclude that any evidence the State refused to disclose regarding Defendant's polygraph examination would not have created a reasonable probability of a different outcome in this case even if it were in accord with Defendant's own polygraph evidence. *See id.* ¶¶ 54-55 (refusing to find an abuse of discretion where there was no reasonable probability that the verdict would differ even if the evidence had been disclosed to the defense). We thus affirm on this ground. *See State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.2d 828 (stating that an appellate court will affirm the district court's decision if it was right for any reason so long as it is not unfair to the appellant to do so). Although we agree with the district court that Defendant's request in this regard was tardy, we reiterate that the State is "obligated to make a reasonably diligent effort to comply with a legally proper discovery request and may not obstruct another party's access to evidence." *State v. Chavez*, 116 N.M. 807, 813, 867 P.2d 1189, 1195 (Ct. App. 1993); *see* Rule

5-501(A)(4) ("[T]he state shall disclose or make available to the defendant . . . any results or reports of . . . polygraph examinations of the defendant[.]").

## C.    The District Court Did Not Err in Asking the Jury for a Numerical Breakdown and in Directing the Jury to Continue Its Deliberations

**{19}**    Defendant contends that his conviction should be reversed because the district court erred in asking for a numerical breakdown of jury votes and by issuing an impermissible shotgun instruction that "may have had an improper, coercive effect" on a holdout juror. Since Defendant did not inform the district court of his objection to the court's communication with the jury until he filed his motion for a new trial five days after the claimed erroneous jury instruction, this issue was not properly preserved, and we therefore review the district court's actions only for fundamental error. *See* Rule 12-216(B)(2) (giving appellate courts the discretion to review for fundamental error as an exception to the rule requiring issue preservation); *see also Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791 (holding that a motion for a new trial is typically not sufficient to preserve an issue that was not otherwise raised during the proceedings).

**{20}**    As we discussed above, under the fundamental error standard of review, the defendant must show the existence of circumstances that "shock the conscience" owing to the fact that the defendant is indisputably innocent or because a mistake in the process makes the conviction fundamentally unfair. *Barber*, 2004-NMSC-019, ¶ 17 (internal quotation marks and citation omitted). Since Defendant does not contend that he is indisputably innocent, he must demonstrate that the "cumulative effect of the district court's actions and the circumstances under which they arose were so egregious and so unduly coercive on the jury [as to cause the jury] to abandon its honest convictions." *Laney*, 2003-NMCA-144, ¶ 49; *see State v. Rickerson*, 95 N.M. 666, 667-68, 625 P.2d 1183, 1184-85 (1981) (reaffirming the rule that states that convictions will be reversed only if the cumulative effect of the district court's actions had a coercive effect on the jury).

**{21}**    Here, in response to a note from the jury foreperson indicating the jury was "having an impossible time reaching a unanimous decision on any of the charges[,]" the district court requested a numerical breakdown as to each count, indicating that it should be done without revealing whether the votes were for conviction or acquittal. The district court then inquired as to whether the jury would be able to reach a verdict if the jury was sent back to deliberate further. In response to this question, the foreperson indicated that the jury "might" be able to reach a unanimous decision with regard to one of the counts. The district court then sent the jury back for further deliberations. Defendant asserts that asking for a numerical breakdown and then instructing the jurors to continue deliberations without admonishing the jurors not to surrender their honest convictions amounted to an impermissible shotgun instruction that could have coerced the holdout juror to abandon his honest convictions.

**{22}**    The New Mexico Supreme Court has explained that, "[w]hile inquiry into the

numerical division of the jury is not to be encouraged, it is not error per se. . . . [S]uch inquiries are reversible error only when shown to have a coercive effect on the jury." *Rickerson*, 95 N.M. at 668, 625 P.2d at 1185 (citation omitted); *Laney*, 2003-NMCA-144, ¶ 50. This is because "[t]he inquiry itself is not coercive since the jury is already well aware of its numerical split." *Rickerson*, 95 N.M. at 668, 625 P.2d at 1185. To determine whether inquiry into numerical division has a coercive effect on jurors, there are three considerations: "[(1)] whether any additional instruction or instructions, especially a shotgun instruction, were given; [(2)] whether the [district] court failed to caution a jury not to surrender honest convictions[;] and [(3)] whether the [district] court established time limits on further deliberations with the threat of mistrial." *Id.* at 667, 625 P.2d at 1184. Furthermore, the district court's communication with the jury is proper as long as the determination of whether or not it should deliberate further is left within the discretion of the jury. *State v. McCarter*, 93 N.M. 708, 710, 604 P.2d 1242, 1244 (1980). Shotgun instructions are prohibited by the New Mexico Supreme Court out of concern for "the potentially coercive effect it has on holdout jurors to abandon their convictions to arrive at a verdict with the majority." *Laney*, 2003-NMCA-144, ¶ 52.

**{23}**    Under the circumstances of this case, we conclude that, cumulatively, the district court's conduct and actions did not have a coercive effect on any potential holdout jurors to abandon their honest convictions. Although asking for the numerical breakdown of votes was not ideal, the district court appeared to have made the inquiry so as to ascertain the "probability of agreement among the jury . . . pursuant to the court's duty to assure that a verdict is reached . . . and in determining whether further deliberations are needed." *Rickerson*, 95 N.M. at 668, 625 P.2d at 1185 (citation omitted). And, the district court was careful in admonishing the foreperson to avoid disclosing whether the votes were for or against conviction and the identities of the jurors for or against conviction. *See Laney*, 2003-NMCA-144, ¶ 56 (noting that in avoiding asking the jurors which way their vote fell, the district court avoided targeting the holdout jurors).

**{24}**    Moreover, the district court did not simply order the jury to continue deliberations; rather, it asked whether further deliberations would help the jury reach a verdict on any of the counts. As the jury foreperson indicated that further deliberations could result in a verdict as to one of the counts, the district court's actions in sending the jury back for further deliberations was not so coercive as to warrant a finding of fundamental error. *Id.* ¶¶ 49, 51, 55 (discussing and rejecting the defendant's arguments that sending the jury back to deliberate, despite ten jurors' belief that they were hopelessly deadlocked, amounted to a "shotgun" instruction, where the district court asked if the jurors could further deliberate and they expressed their willingness to do so). And, although the district court neglected to admonish the jurors not to abandon their honest convictions before returning to deliberations, the court issued this instruction at the initial commencement of deliberations.

**{25}**    After examining these cumulative circumstances, we cannot conclude that the district court's actions amounted to a shotgun instruction or were so egregious and so unduly coercive on the jury as to cause it to abandon its honest convictions. A finding of

8

fundamental error is unwarranted.

## III. CONCLUSION

{26}    For the reasons explained above, we affirm Defendant's conviction.

{27}    **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**CYNTHIA A. FRY, Judge**

**Topic Index for _State v. Romero_, No. 30,607**

**APPEAL AND ERROR**
Fundamental Error
Harmless Error
Standard of Review

**CRIMINAL LAW**
Criminal Sexual Penetration
Sexual Exploitation of Children
Sexual Offences

**CRIMINAL PROCEDURE**
Indictment

**EVIDENCE**
Expert Witness
Polygraph Examination

**JURIES**
Communications with Court