This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                              **NO. 32,757**

**ISAAC CUEVAS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Olga Serafimova, Assistant Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Sergio Viscoli, Appellate Defender
David Henderson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**GARCIA, Judge.**

{1}     Defendant Isaac Cuevas appeals his conviction after a jury trial of battery upon a peace officer in violation of NMSA 1978, Section 30-22-24 (1971). He argues on appeal that the district court committed fundamental error requiring reversal of the conviction because (1) it failed to submit either a general intent or a specific intent instruction to the jury, and (2) the district court improperly coerced the jury into reaching a verdict after it reported it was deadlocked. We conclude that (1) the omission of the general intent instruction, UJI 14-141 NMRA, was not reversible error in this case; and (2) the district court's comments to the jury were not so coercive as to constitute fundamental error. Accordingly, we affirm.

**BACKGROUND**

{2}     On November 14, 2009, two uniformed deputies responding to a call encountered Defendant and his girlfriend. Defendant had been drinking alcohol, was "rude, aggressive, [and] belligerent[,]" and spoke in an insulting manner toward one of the deputies. While this same deputy was patting down Defendant for weapons, Defendant pulled away and struck the deputy in the face with his elbow. The deputies subdued Defendant and arrested him. Defendant was charged on criminal information with battery upon a peace officer, a fourth degree felony. At trial, Defendant and his girlfriend testified that Defendant had slipped on uneven ground during the pat-down

and did not strike the deputy intentionally. The deputies, on the other hand, testified that Defendant could not have slipped because of the way the deputy had positioned Defendant during the pat-down. The jury convicted Defendant of battery upon a peace officer. We address the other relevant events that occurred at trial in our discussion below.

**DISCUSSION**

**A.    Omission of the General Intent Jury Instruction**

{3}    At trial, the State asked the district court to instruct the jury on the statutory elements of battery upon a peace officer, *see* UJI 14-2211 NMRA, and on general criminal intent, *see* UJI 14-141. Defendant objected to giving the general intent instruction, arguing that battery upon a peace officer was a specific intent crime. The district court asked the prosecutor whether it agreed that battery upon a peace officer was a specific intent crime, and the prosecutor, initially unsure, eventually replied that he agreed. As a result, the district court did not give the general intent instruction to the jury. In addition, the district court did not give any other instruction to the jury concerning specific intent. Neither Defendant nor the State requested a specific intent instruction or otherwise asked the district court to address the lack of such an instruction.

3

{4} On appeal, Defendant changes his position and asserts that battery upon a peace officer is a general intent crime and that the general intent instruction should have been given to the jury. He submits that even though he incorrectly objected to the general intent instruction at trial, omission of the instruction amounted to fundamental error because Defendant's intention when he struck the deputy was the only disputed factual issue at trial. Because both Defendant and the State agree on appeal that battery upon a police officer is a general intent crime, the question before us is whether the district court's failure to give a general intent instruction was reversible error.

{5} Defendant not only failed to preserve any error with respect to the general intent instruction's omission, he initiated the alleged error by asking the district court to exclude UJI 14-141. Defendant suggests, however, that his erroneous objection to the instruction is not what ultimately caused it to be omitted, but rather it was the State's acquiescence and agreement that battery upon a peace officer was a specific intent crime that ultimately caused the district court to omit the instruction. Thus, Defendant asserts that we should review the omission of the general intent instruction for fundamental error. We disagree. Where a defendant invites a deficiency in the jury instructions based on the defendant's mistake about the law and the resulting

deficiency is not the result of oversight and neglect, then the fundamental error doctrine may not be invoked. *State v. Ortega*, 2014-NMSC-017, ¶¶ 33-35, 327 P.3d 1076. Furthermore, "[i]nvited error occurs where a party has contributed, *at least in part*, to perceived shortcomings in a trial court's ruling, and, as a result, the party should hardly be heard to complain about those shortcomings on appeal." *Chris L. v. Vanessa O.*, 2013-NMCA-107, ¶ 27, 320 P.3d 16 (emphasis added) (alteration, omission, internal quotation marks, and citation omitted).

{6}	In any event, omission of the general intent instruction in this case is not reversible error under any standard, fundamental or otherwise. Our appellate courts have established that the language in the general intent instruction's use note directing when the instruction must be given does not elevate the general intent instruction "to the status of an *essential element*" requiring automatic reversal. *State v. Doe*, 1983-NMSC-096, ¶¶ 8, 10, 100 N.M. 481, 672 P.2d 654 (disagreeing with the opposite conclusion reached in *State v. Curlee*, 1982-NMCA-126, 98 N.M. 576, 651 P.2d 111, and *State v. Otto*, 1982-NMCA-149, 98 N.M. 734, 652 P.2d 756). Instead, "[t]he failure to give [the general intent instruction] must be looked at, with other instructions as a whole, to determine whether the crime was properly instructed on." *Doe*, 1983-NMSC-096, ¶ 10.

**{7}** We review whether it was error to omit a jury instruction by determining "whether a reasonable juror would have been confused or misdirected" without the omitted instruction. *State v. Barber*, 2004-NMSC-019, ¶ 19, 135 N.M. 621, 92 P.3d 633. "Juror confusion or misdirection may stem . . . from instructions . . . which, through omission . . . , fail to provide the juror with an accurate rendition of the relevant law[,]" *State v. Laney*, 2003-NMCA-144, ¶ 38, 134 N.M. 648, 81 P.3d 591 (alteration, internal quotation marks, and citation omitted), or create an ambiguity that renders an element of the crime susceptible to "more than one interpretation[.]" *State v. Mascareñas*, 2000-NMSC-017, ¶ 17, 129 N.M. 230, 4 P.3d 1221 (internal quotation marks and citation omitted). If we conclude that a reasonable juror would have been confused or misdirected without the instruction, we apply a fundamental error analysis, which "requires a higher level of scrutiny[,]" because Defendant did not object to the lack of a general intent instruction at trial. *Barber*, 2004-NMSC-019, ¶ 19; *see State v. Cunningham*, 2000-NMSC-009, ¶ 11, 128 N.M. 711, 998 P.2d 176. We then "review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice." *Barber*, 2004-NMSC-019, ¶ 19 (internal quotation marks and citation omitted).

6

**{8}** Here, the elements instruction given to the jury for battery upon a peace officer required the State to "prove . . . beyond a reasonable doubt" that Defendant, in relevant part, "*intentionally* touched or applied force to [the deputy] by swinging his [] elbow and striking [the deputy] on his face below his left eye while [the deputy] was conducting a pat down[.]" (Emphasis added.) Therefore, the mens rea element of intent was specifically given to the jury as one of the requirements within the elements instruction. The first sentence of the omitted general intent instruction that was withheld from the jury would have provided this same language—that "the state must prove . . . beyond a reasonable doubt that the defendant acted intentionally when he committed the crime." UJI 14-141. Omission of this part of the general intent instruction would not confuse or misdirect a juror because it merely repeats that same portion of the elements instruction. In addition, the explanation of what it means to act intentionally found in the second sentence of the omitted UJI 14-141 instruction is not meaningfully different from the commonly understood dictionary meaning for the word "intentionally." *See* VII *Oxford English Dictionary* 1080 (2d ed. 1989, reprinted with corrections 1991) (defining "intentionally[,]" in relevant part, "[w]ith intention, on purpose"). As a result, error could not result from this portion of the omitted UJI 14-141 instruction.

7

{9}      The remaining portions of the omitted instruction explain that "[a] person acts intentionally when he purposely does an act which the law declares to be a crime, even though he may not know that his act is unlawful. Whether the defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, and his conduct and any statements made by him." UJI 14-141 (alternations omitted). The question is whether the omission of this additional explanation in the omitted instruction would cause confusion or misdirect the jury regarding Defendant's intentions in striking the deputy. While this language may be somewhat helpful to a jury and to the State, Defendant has not identified how this language was helpful or critical to the defense of this particular crime. Considering the surrounding circumstances in this case—Defendant's belligerent and insulting manner toward the deputies—omission of the general intent instruction was not necessarily harmful to Defendant. Defendant has not identified any particular harm that may have resulted to his defense, and it is also unclear whether Defendant's trial counsel may have strategically objected to the general intent instruction for another reason. Thus, we conclude that omission of the general intent instruction under these circumstances would not confuse or misdirect the jury. *See Barber*, 2004-NMSC-019, ¶ 19.

8

{10} Furthermore, contrary to Defendant's assertion, the omission of UJI 14-141 did not create an ambiguity that rendered an element of the crime susceptible to "more than one interpretation" like the omission of the definition of "criminal negligence" that arose in *Mascareñas*, 2000-NMSC-017, ¶¶ 15, 17 (internal quotation marks and citation omitted). There, our Supreme Court concluded that omission of an instruction on the legal definition of "reckless disregard" in a negligent child abuse case was reversible error because the jury could have reasonably interpreted other portions of the jury instructions to require a lower civil negligence standard of proof instead of the higher reckless disregard standard required in such cases. *See id.* ¶¶ 8-9. We are faced with no such ambiguity in this case, and Defendant has failed to direct us toward any particular ambiguity that might be asserted.

**B.      Omission of a Specific Intent Instruction**

{11} As an alternative position, Defendant argues that because the parties and the district court agreed at trial that battery upon a peace officer was a specific intent crime, that agreement became the law of the case. Thus, Defendant asserts, the failure to instruct the jury on specific intent, even though Defendant neither offered nor identified an appropriate specific intent instruction, amounted to fundamental error. Defendant does not directly identify the Uniform Jury Instruction concerning specific

9

intent that he claims should have been given in this case. However, Defendant cites UJI 14-5111 NMRA in his brief in chief. To the extent that Defendant argues UJI 14-5111 was required to be given for the specific intent crime in Defendant's case, or that a different instruction on specific intent must be given, we disagree.

{12}     UJI 14-5111 instructs the jury, in pertinent part,

> Evidence has been presented that the defendant was [intoxicated from the use of [alcohol] [drugs] [and/or] [suffering from a mental disease or disorder]. You must determine whether or not the defendant was [intoxicated from the use of alcohol and/or drugs and/or suffering from a mental disease or disorder] and, if so, what effect this had on the defendant's ability to form the intent to [do the further act or achieve the further consequence that is part of the essential elements instruction of the specific intent crime being tried].

First, we cannot conclude that UJI 14-5111 should have been given because the essential elements instruction for battery upon a peace officer contains no language concerning a specific intent to do a further act or achieve a further consequence as required by the specific language in this instruction. Without such language, UJI 14-5111 cannot be constructed in a way that would make sense to a jury. Second, UJI 14-5111's use note states that the instruction is to be used "for the intoxication or mental disease defense[.]" UJI 14-5111 Use Note 1. Even if battery upon a peace officer were a specific intent crime and the intoxication and mental disease defenses were available to Defendant, Defendant did not assert these defenses. Therefore, we conclude that

omission of UJI 14-5111 in this case was not error. Finally, we know of no other jury instruction on specific intent that would apply in this case, and Defendant has not cited to any. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (recognizing that appellate courts "assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority"). As a result, no error occurred in failing to provide the jury with some form of specific intent instruction despite the district court's decision not to give UJI 14-141, the general intent instruction.

**C.      The District Court's Comments to the Jury**

{13}      The jury began its deliberations in this case at 4:46 p.m. on a Friday afternoon. About thirty minutes later, the jury foreperson gave the district court a note stating that the jury was deadlocked, six to six. The district court judge called the jury into the courtroom and had the following dialog with the jury foreperson in the jury's presence.[1]

---

[1]Defendant quotes additional statements made by the district court in his brief in chief; however, we do not consider those statements because they were not made in front of any jury members.

11

[JUDGE:]       I received your note saying that the jury after a whole half hour is hopelessly deadlocked?

[FOREPERSON:] Yes. Yes, sir.

[JUDGE:]       Do you believe that the jury could come to some agreement if you were to spend some more time deliberating?

[FOREPERSON:] Maybe much time. Probably a lot of time. . . . It's going to be a long time.

[JUDGE:]       There's not a limit on the amount of time that the jury can spend doing this, and there's some options that we would have. . . . The jury can continue deliberating into the evening, if that's what they chose to do, or the jury could choose to retire for the weekend and come back on Monday and commence deliberations, if there was some possibility of actually reaching a verdict at some point, rather than, you know, I mean usually after only a half an hour, that seems awfully quick to throw in the towel. But I wasn't in that room, and I don't know how firmly set the opinions were, so, what do you think about continuing to deliberate, either tonight or come back on Monday? Why don't we do this: why don't I let you all go back into the deliberation room and talk about that, and then you can either send out a note or give us some indication of what you think of that.

About thirty minutes later, the jury returned with a guilty verdict. The district court polled the jury, confirming that all twelve jurors participated in and agreed with the guilty verdict. Defense counsel did not object at trial to the comments that the judge

12

made to the jury. Defendant asserts for the first time on appeal that these comments were improperly coercive and constituted fundamental error. Specifically, he argues that the district court's statements to the jury amounted to an unconstitutional "shotgun instruction" to continue deliberations and that the district court should have polled the jurors to determine whether each juror thought that the jury might be able to reach a verdict if it were given more time. We disagree.

**{14}** We review unpreserved claims asserting that the district court engaged in coercive communications with the jury for fundamental error. Rule 12-216(B)(2) NMRA; *State v. Romero*, 2013-NMCA-101, ¶ 19, 311 P.3d 1205. "[W]hen a statement is submitted to the court by the jury during deliberations concerning the inability of the jury to arrive at a verdict, together with a disclosure of the numerical division, the judge must communicate with that jury in some fashion." *State v. Juan*, 2010-NMSC-041, ¶ 17, 148 N.M. 747, 242 P.3d 314 (emphasis, internal quotation marks, and citation omitted). In response, the district court "is permitted to inform the jury that it *may* consider further deliberations[,]" but it is not permitted to issue a "shotgun instruction"—in other words, "[an instruction to] the jury that it *must* deliberate further[.]" *Id.* (internal quotation marks and citation omitted); *see, e.g.*, *State v. McCarter*, 1980-NMSC-003, ¶¶ 4-8, 93 N.M. 708, 604 P.2d 1242 (holding

13

that the district court's note to the jury stating, "You must consider further deliberations[,]" was an improper shotgun instruction).

{15} The facts of this case are much like the facts in *Romero*. There, the jury foreperson gave the district court a note stating that the jury was "having an impossible time reaching a unanimous decision[.]" *Romero*, 2013-NMCA-101, ¶ 21 (internal quotation marks omitted). The district court asked the foreperson "whether the jury would be able to reach a verdict if the jury was sent back to deliberate further." *Id.* The foreperson responded that the jury " 'might' be able to reach a unanimous decision[.]" *Id.* "The district court then sent the jury back for further deliberations." *Id.* This Court concluded that even though the district court "neglected to admonish the jurors not to abandon their honest convictions before returning to deliberations," the court's comments were "not so coercive as to warrant a finding of fundamental error." *Id.* ¶ 24. In reaching this conclusion, this Court reasoned that "the district court did not simply order the jury to continue deliberations; rather, it asked whether further deliberations would help the jury reach a verdict" and the "foreperson indicated that further deliberations could result in a verdict[.]" *Id.*

{16} Here, although the court's comments that "the jury after a whole half hour is hopelessly deadlocked" and that it "seem[ed] awfully quick to throw in the towel"

14

likely communicated criticism of the relatively short amount of time the jury had spent deliberating, the district court's comments, read collectively, do not amount to the level of coercion that requires reversal. Like *Romero*, the district court in this case did not simply order the jury to continue deliberating; rather, it asked the foreperson in the jury's presence whether she "believe[d] that the jury could come to some agreement if [it] were to spend some more time deliberating[,]" and the foreperson replied, "Maybe[,]" although she thought it might take "a lot of time." The court also asked the jury to discuss and communicate to the court what it thought about continuing to deliberate. Under these circumstances, it was not improper for the district court to present the jury with the option to either "continue deliberating into the evening, if that's what they chose to do," or "retire for the weekend and come back on Monday and commence deliberations, if there was some possibility of actually reaching a verdict[.]" The district court acknowledged that he "wasn't in that room" and that he didn't "know how firmly set the opinions were[.]" Although the district court sent the jury back into the deliberation room, it did not order the jury to deliberate; rather, it suggested that the jury "talk about" the options and then "either send out a note or give us some indication of what you think of that." These comments, considered cumulatively, were not "so egregious and so unduly coercive on the jury [as to cause

15

the jury to] abandon its honest convictions[.]" *Laney*, 2003-NMCA-144, ¶ 49; *see also Romero*, 2013-NMCA-101, ¶ 20 (recognizing that the fundamental error standard of review requires the defendant to show the existence of circumstances that shock the conscience due to the fact that the defendant is indisputably innocent or because a mistake in the process renders the conviction fundamentally unfair).

{17}　Furthermore, we are unpersuaded that Defendant has a right to have the jury polled for the purpose of inviting a mistrial to determine whether each member believes the jury has no chance of reaching a verdict. Defendant cites no case law in support of this proposition and instead cites to authority that stands for different propositions.

{18}　*United States ex rel.Webb v. Court of Common Pleas of Philadelphia County* was a robbery case where the trial judge, after only six hours of jury deliberation and without prompting from the defendant or the prosecution, sua sponte asked the jury foreman whether there was "any hope of arriving at a verdict" and whether the foreman felt that the jurors' positions were "so adamant that you couldn't possibly arrive at a unanimous verdict[.]" 516 F.2d 1034, 1036 (3d Cir. 1975). After the foreman affirmed that he did not think a verdict could be reached, the judge declared a mistrial and discharged the jury. *Id.* On appeal, the Third Circuit warned that

16

"[b]ecause of the constitutional policy against terminating a trial before the defendant has had an opportunity to be acquitted by a jury, a trial judge must exercise extreme caution before declaring a mistrial." *Id.* at 1042. The reason for this policy is that the "[D]ouble [J]eopardy [C]lause . . . prevent[s] the government from repeatedly inflicting upon [a defendant] the burden of a trial." *Id.* at 1041. "[T]he trial court must exercise a sound discretion in discharging a jury which has not reached a verdict. To be sure, . . . the power to dismiss the jury ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious cases." *Id.* (internal quotation marks and citation omitted). "In a close case, any doubts are to be resolved in favor of barring retrial." *Id.* at 1043. The Third Circuit concluded that the trial judge did not exercise cautious discretion in determining whether the jury could reach a verdict, and that retrying the defendant under such circumstances would violate double jeopardy. *Id.* at 1045. The Circuit also noted that "there [was] no clear showing that the foreman's responses [to the trial judge's questions] necessarily represented the unanimous opinion of the jury, or even that of the majority of the panel[,]" *id.* at 1044, suggesting that the trial court should have polled the individual jurors before resorting to mistrial. We decline to construe this comment to mean that a trial court must poll individual jurors before sending them back to the deliberation room,

especially where the foreperson indicates a verdict is possible.

**{19}** Defendant's citation to *People v. Perez*, 212 Cal. App. 3d 395 (1989), is also unpersuasive. There, the jury foreman submitted a note to the trial court stating that the jury was deadlocked. *Perez*, 212 Cal. App. 3d at 402. The trial judge polled the jury, and a few jury members indicated they thought a verdict could be reached. *Id.* As a result, the trial court allowed the jury to continue deliberations after taking a break. *Id.* The appellate court did not say that polling the jurors under these circumstances was mandatory. Again, we decline to read this case as constitutionally requiring a trial court to poll the jury every time it reaches an impasse. Based on the principles expressed in *Webb*, it was not fundamental error for the district court in this case to first explore the possibility of a verdict with the jury foreperson. In the present case, the foreperson was questioned by the district court with the entire jury present in the courtroom to listen to the entire exchange. Upon the foreperson's indication that a verdict was possible given more time, there was no need to poll the remainder of the jury because the foreperson expressed the panel's position that it was still possible to reach a verdict, and his fellow jurors were present to listen to this representation. This is reason enough to allow the jury more time to deliberate in this case, especially where the jury was evenly split. *But see Jiminez v. Myers*, 40 F.3d 976, 980-81 (9th

Cir. 1993) (concluding, under the circumstances of that case, that the trial court's comments and conduct improperly amounted to an instruction to "work toward[] unanimity and the minority to reexamine its views" in a case where the jury was split eleven to one). As a result, we conclude there was no error in allowing the jury to consider whether to continue its deliberations in Defendant's case and ultimately reach a unanimous verdict after further deliberations.

**CONCLUSION**

{20}    We affirm Defendant's conviction.

{21}    **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**CYNTHIA A. FRY, Judge**